Iván Porto y su esposa Mildred Siurano, etc., demandantes y recurridos, *v.* Bentley Puerto Rico, Inc. y otros, demandados y recurrentes.

*Número:* RE-89-123 *Resuelto:* 23 de diciembre de 1992

*Carl Schuster* y *Aníbal Irizarry*, abogados de la recurrente; *Enrique Alcaraz Micheli*, abogado de los recurridos.

EL JUEZ ASOCIADO SEÑOR REBOLLO LÓPEZ emitió la opinión del Tribunal.

El recurrido Iván Porto trabajaba en el departamento de materiales, ocupando la posición de oficinista de recibo (*receiving clerk*) de la corporación recurrente Bentley Puerto Rico, Inc. Llevaba trabajando con dicha empresa dos (2) años y tres (3) meses, mediante contrato de empleo a tiempo indefinido.

En la empresa de la recurrente existía un solo vehículo de motor (Van marca Ford), el cual estaba adscrito al departamento de compras. Dicho vehículo de motor tenía asignado un conductor o chofer que lo utilizaba durante las horas laborables de la Compañía. En las horas no laborables, dicho vehículo solamente podía ser usado con la debida autorización del supervisor de compra, u otro oficial de la Compañía, para casos de emergencia o accidente. Luego de que el chofer del vehículo terminaba su jornada de trabajo, las llaves del referido vehículo se guardaban en unas de las gavetas del escritorio de la Sra. Carmen Delia Vargas, supervisora del departamento de compras.

Así las cosas, durante la semana del 9 de agosto de 1985, el demandante recurrido Iván Porto obtuvo autorización de su jefe inmediato, Sr. Luis J. Berga, gerente de materiales, para utilizar el referido vehículo siempre y cuando sus labores le requirieran quedarse trabajando fuera del horario regular de la empresa. Conforme a dicha autorización, el recurrido venía obligado a devolver el vehículo antes del comienzo de labores del día siguiente.

El martes 13 de agosto de 1985, el recurrido utilizó el automóvil de la empresa; ello debido a que perdió la transportación que le brindaba una compañera de trabajo y su carro personal todavía estaba dañado. Ese día en particular, el demandante no obtuvo la correspondiente autorización de su supervisor inmediato, Luis J. Berga, ya que éste se encontraba en los Estados Unidos. Tampoco obtuvo autorización de otro oficial de la Compañía. Ante esa situa-

ción, y debido a la hora en que terminó su trabajo,[1] el recurrido le informó al único otro empleado que permanecía en la empresa, Sr. Andrés Santos,[2] que utilizaría el vehículo de la Compañía. Acto seguido, el recurrido entró en la oficina de la supervisora de compras, tomó las llaves del vehículo, y se marchó en el mismo. El recurrido se detuvo en el portón principal de la planta y le notificó al guardián de turno en ese momento que estaba haciendo uso del vehículo de la compañía. Al día siguiente, antes de las 7:00 A.M., el demandante recurrido entregó el vehículo.

A su regreso a Puerto Rico, el señor Berga realizó una investigación de lo sucedido. El 16 de agosto de 1985 el Sr. Iván Porto fue despedido de su empleo. En esa fecha, el señor Berga le entregó al recurrido una carta de despido en la cual indicaba que se le despedía por haber violado la Regla 2 de Conducta de la Compañía, la cual sancionaba el "apropiarse ilegalmente de propiedad de la Compañía o de otro empleado".[3] Apéndice, pág. 23.

Posteriormente, el 5 de junio de 1986, el Sr. Iván Porto y su esposa, en su carácter personal y en representación de la sociedad legal de gananciales y de sus hijos menores, presentaron una acción de daños y perjuicios contra la corporación recurrente ante el Tribunal Superior de Puerto Rico, Sala de Mayagüez. En dicha demanda reclamaron una compensación ascendente a cien mil dólares ($100,000) a consecuencia de las alegadas imputaciones falsas, calumniosas y libelosas que le hiciera el patrono con

---

[1] Las exigencias del trabajo requirieron que el demandante permaneciera en la empresa después de horas laborables hasta alrededor de las 9:00 P.M. de la noche.

[2] El demandante declaró en la vista en su fondo, que desconocía que Andrés Santos se desempeñaba como mecánico solamente, sino que lo consideraba como la persona que estaba ocupando el puesto de correr la compañía al igual que otras tres (3) personas que corrían la compañía de noche. Transcripción de Evidencia, págs. 49–50.

[3] Al momento del despido, el demandado recurrente le pagó al recurrido la indemnización que provee la Ley Núm. 80 de 30 de mayo de 1976 (29 L.P.R.A. secs. 185a–185m), o sea, la mesada.

motivo de su despido. Se alegó que al momento de ser despedido se le imputó falsamente al demandante recurrido Porto haberse apropiado ilegalmente del vehículo de la compañía y que dicha imputación surgía de la carta de despido fechada 16 de agosto de 1985.([4])

La parte demandada recurrente contestó la demanda, y luego de los trámites procesales correspondientes, el tribunal de instancia dictó sentencia declarando con lugar la demanda. Como cuestión de hecho y de derecho, el foro de instancia determinó que la carta de despido le imputaba falsamente al demandante la comisión de un delito y la misma le ocasionó daños a su reputación.([5])

Inconforme, el demandado recurrente acudió en revisión ante este Tribunal. En síntesis, le imputa al foro de

---

([4]) La carta de despido en su totalidad disponía lo siguiente:

"El martes, 13 de agosto de 1985, usted entró sin autorización a la oficina de la señora Carmen Delia Vargas, nuestra compradora, y se apropió ilegalmente de las llaves del ve[h]ículo oficial de la Compañía ("van" marca Ford). Sin autorización de ningún oficial de Bentley, utilizó dicho vehículo y regresó con el mismo el miércoles, 14 de agosto.

"Dicho acto incurre en una violación a la regla de conducta número dos (2), que lee 'No apropiarse ilegalmente de propiedad de la compañía o de otro empleado'. Siendo esto así, usted incurrió en una conducta inaceptable por parte de un empleado de la empresa.

"Por esta razón le informamos que efectivo hoy, 16 de agosto de 1985, cesan sus funciones con Bentley AHS del Caribe, Inc.

"Le estamos incluyendo el cheque correspondiente al total de días de vacaciones acumuladas (11 días). En adición a esto, y como una ayuda de parte de la empresa y un acto de buena fe, le estamos incluyendo el pago de mesada correspondiente a un mes de sueldo más dos semanas adicionales por sus dos años de servicio.

"De tener alguna duda en cuanto a la cantidad recibida, favor de comunicarse por teléfono con el Departamento de Personal." Apéndice, pág. 26.

([5]) En su dictamen, el foro sentenciador dispuso las siguientes indemnizaciones:

"a) A la Sociedad Legal de Gananciales, compuesta por Iván Porto y Mildred Siurano, por concepto de pérdida económica, a razón de $5.00 la hora, por 2,080 horas anuales desde el 16 de agosto de 1985 y hasta el 16 de enero de 1989, la suma de $35,535.00[, m]ás los que se hayan acumulado a razón de $867.00 mensuales de 16 de agosto de 1988 hasta la fecha en que se dicta esta sentencia.

"b) A Iván Porto por sufrimientos y angustias mentales $15,000.00.

"c) A Mildred Siurano por sufrimientos y angustias mentales $5,000.00.

"d) A Iván José Ernesto por sufrimientos y angustias mentales $500.00.

"e) A Iván José Ismael por sufrimientos y angustias mentales $500.00

"f) A Mildred Dinorah Del Carmen por sufrimientos y angustias mentales $500.00." Apéndice, pág. 9.

instancia haber errado al imponerle responsabilidad a la corporación recurrente cuando no se establecieron los elementos esenciales de una causa de acción independiente al despido, siendo el remedio exclusivo la mesada que establece la Ley Núm. 80 de 30 de mayo de 1976 (29 L.P.R.A. secs. 185a–185m), la cual ella pagó; que erró el tribunal al concluir que se hicieron manifestaciones libelosas cuando faltó el requisito de "publicación"; que cometió grave error al apreciar la prueba y concluir que el demandante tenía autorización para utilizar el vehículo, y que erró en la concesión de ciertas partidas de daños, las cuales no estaban sostenidas por la prueba.[6]

Expedimos el auto de revisión solicitado. Ambas partes han comparecido. Estando en condiciones de resolver el recurso, procedemos a así hacerlo.

---

[6] En el recurso de revisión radicado, el recurrido le imputa al tribunal de instancia haber errado:

"A) ... al adjudicar daños dentro del contexto obrero-patronal. El Tribunal de instancia incurrió en grave error manifiesto y abusó de su discreción al responsabilizar a la demandada-recurrente en daños y perjuicios obviando la doctrina del remedio exclusivo diseñada bajo la Ley Núm. 80 del 30 de mayo de 1976, 29 L.P.R.A. Sec. 185(a) y siguientes. El Tribunal no tenía facultad para conceder el remedio solicitado ya que no se establecieron los elementos esenciales de una causa de acción independiente al acto del despido.

"B) ... al concluir que se le hicieron imputaciones libelosas o calumniosas al demandante-recurrido que constituyen difamación conforme a la Ley de Libelo y Calumnia de 1902; 32 L.P.R.A. Secs. 3141 y siguientes. No se estableció el elemento esencial de publicación a terceras personas requerido bajo el estatuto. En el contexto en que ocurrió la comunicación alegadamente difamatoria, la misma gozaba de un privilegio restringido.

"C) ... al concluir que surgió una causa de acción por difamación cuando tampoco se estableció el elemento de la negligencia de la demandada-recurrente en la publicación de la carta de despido del demandante-recurrida [sic] cuando no se presentó prueba que sostenga la concesión de las partidas incluidas en su Sentencia. Por ende, las mismas son excesivas y no guardan relación causal con la prueba presentada durante el juicio. Al no estar sostenidas por la prueba, constituyen un abuso de discreción y denotan prejuicio y parcialidad.

"D) ... en su apreciación de la prueba en contra del balance más racional, justiciero y jurídico de la totalidad de la evidencia recibida, al concluir que el demandante-recurrido tenía autorización expresa para utilizar el vehículo propiedad de la Compañía. No se estableció otro de los elementos esenciales a la causa de acción, el de la falsedad de la publicación.

"E) ... al conceder daños al demandante-recurrida [sic]." Solicitud de revisión, págs. 5–6.

# I

■ En esta jurisdicción la norma general, en relación con la materia en controversia, es a los efectos de que un obrero o trabajador contratado por tiempo indeterminado que es despedido sin justa causa solamente tiene derecho al remedio exclusivo que provee la Ley Núm. 80 de 30 de mayo de 1976, ante. *Rivera v. Security Nat. Life Ins. Co.*, 106 D.P.R. 517, 527 (1977); *Arroyo v. Rattan Specialties, Inc.*, 117 D.P.R. 35, 65 (1986). Dicho estatuto provee una indemnización equivalente a un (1) mes de sueldo más una (1) semana de compensación por cada año de servicio con el patrono. 29 L.P.R.A. sec. 185a.

■ No obstante, en *Rivera v. Security Nat. Life Ins. Co.*, ante, pág. 527, reconocimos que los remedios de las leyes de trabajo "no excluyen la responsabilidad civil de un patrono por conducta torticera en que incurriere por otros motivos que no sean la mera violación de [estas] leyes ...". En otras palabras, en relación con el *mero* despido sin justa causa, el empleado solamente tiene disponible el remedio que provee la Ley Núm. 80, ante; ello no obstante, si con el despido concurren otras actuaciones torticeras, que sean independientes al mismo, entonces procede que se responsabilice al patrono a base de dicha conducta.(⁷)

---

(⁷) Cabe reiterar lo que expresáramos en *Arroyo v. Rattan Specialties, Inc.*, 117 D.P.R. 35, 65 (1986), a los efectos de que:

"El hecho de que la violación de los derechos constitucionales en este caso haya ocurrido dentro del contexto de la relación obrero-patronal y que se trate de un obrero contratado sin tiempo determinado (*employment-at-will*), no implica que éste haya renunciado a sus derechos constitucionales y se vea impedido de obtener un remedio real y efectivo que los vindique. A pesar de que, como regla general, a un obrero o trabajador contratado sin tiempo determinado se le puede despedir por justa causa, sin causa o por causa injustificada y que bajo estas circunstancias el único derecho que le asiste es el provisto por la Ley Núm. 80 de 30 de mayo de 1976; no es menos cierto que una excepción a esta norma es que el despido se haga con el propósito y la intención de frustrar o subvertir, o que tenga el efecto de frustrar o subvertir una clara política pública. En relación con los contratos sin término determinado, la legislación laboral se ha interpuesto para impedir que al separarse al empleado éste quede en total desamparo económico mientras gestiona y consigue

En el caso ante nos, el demandante recurrido reclamó los daños y perjuicios causados, no por el mero despido efectuado por el patrono, sino por las alegadas imputaciones difamatorias que le hiciera el patrono en la carta de despido. Esta causa de acción en daños por difamación es una independiente al despido del empleado, por lo que si el demandante recurrido establece y cumple con los requisitos de dicha acción, el patrono viene obligado a resarcir los daños causados al demandante.

## II

El presente caso gira en torno a una acción de libelo dentro de una relación patrono-empleado, en la que ambas partes son "personas privadas" y la alegada expresión difamatoria no es de interés público o general. En nuestra jurisdicción, la fuente principal de protección contra la expresión difamatoria lo es la Constitución del Estado Libre Asociado de Puerto Rico. La Sec. 8 del Art. II de nuestra Constitución, L.P.R.A., Tomo 1, ed. 1982, pág. 292, reconoce el derecho de "[t]oda persona ... a protección de ley contra ataques abusivos a su honra, a su reputación y a su vida privada o familiar". Este derecho que se manifiesta a través de la acción de difamación se contrapone al derecho fundamental de libertad de expresión y de prensa, Art. II, Sec. 4, Const. E.L.A., ante. *Méndez Arocho v. El Vocero de P.R.*, 130 D.P.R. 867 (1992); *Villanueva v. Hernández Class*, 128 D.P.R. 618 (1991); *Clavell v. El Vocero de P.R.*, 115 D.P.R. 685, 690–691 (1984); *Cortés Portalatín v. Hau Colón*, 103 D.P.R. 734, 738 (1975).

Por otro lado, desde principios de siglo y antes de la vigencia de nuestra Constitución de 1952, la protección

---

nuevo empleo. *Cassasús v. Escambrón Beach Hotel*, 86 D.P.R. 375, 379 (1962). Por lo tanto, esta legislación no puede operar para privar al obrero de los remedios apropiados para vindicar eficazmente sus derechos constitucionales." (Escolios omitidos.)

344

contra expresiones difamatorias en nuestra jurisdicción surgía de la Ley de 19 de febrero de 1902, la cual estableció en Puerto Rico una acción civil en daños y perjuicios por libelo y calumnia. 32 L.P.R.A. sec. 3141 *et seq.*(8) Debido a ello, la "vigencia de nuestra Ley de Libelo y Calumnia está condicionada, naturalmente, a que su aplicación no sea incompatible con las antes citadas disposiciones de nuestra Constitución ... ni con las interpretaciones judiciales [del Supremo federal acerca de la Primera Enmienda de la Constitución de los Estados Unidos]". (Escolio omitido.)(9) *Villanueva v. Hernández Class*, ante, pág. 641. Véanse: *Clavell v. El Vocero de P.R.*, ante, pág. 690; *Cortés Portalatín v. Hau Colón*, ante, pág. 738; *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 348–349 (1974).

En vista de lo resuelto por el Tribunal Supremo de los Estados Unidos en *Gertz v. Robert Welch, Inc.*, ante, págs. 345 y 347, Puerto Rico puede legislar en el área de libelo y calumnia siempre y cuando no se imponga respon-

---

(8) Como es sabido, nuestra Ley de Libelo y Calumnia de 1902 proviene del derecho común norteamericano. *Chico v. Editorial Ponce, Inc.*, 101 D.P.R. 759, 766 (1973); *Díaz v. P.R. Ry., Lt. & P. Co.*, 63 D.P.R. 808, 811 (1944). La Sec. 2 (32 L.P.R.A. sec. 3142 (ed. 1968)) define libelo como:

"Se entiende por libelo la difamación maliciosa que públicamente se hace en contra de una persona, por escrito, impreso, signo, retrato, figura, efigie u otro medio mecánico de publicación, tendente a exponer a dicha persona al odio del pueblo o a su desprecio, o a privarle del beneficio de la confianza pública y trato social, o a perjudicarle o deshonrarle, o cualquiera difamación maliciosa publicada, como antes se ha dicho, con la intención de denigrar o deprimir la memoria de un muerto y desacreditar o provocar a los parientes y amigos sobrevivientes."

(9) Cabe reiterar que estos nuevos elementos constitucionales que rigen nuestra Ley de Libelo y Calumnia, "aun cuando no han derogado ... en su totalidad, sí han tenido el efecto de modificarla significativamente. A manera de ejemplo, mencionamos que doctrinas que fueron desarrolladas al amparo de la citada ley, tales como las doctrinas de la presunción de malicia, la responsabilidad sin falta y la presunción de daños, carecen de vigencia en nuestros días". *Villanueva v. Hernández Class*, 128 D.P.R. 618, 641 esc. 13 (1991). Véase *Torres Silva v. El Mundo, Inc.*, 106 D.P.R. 415, 423 (1977). "Ello, sin embargo, no debe constituir impedimento para que nos esforzemos por darle efecto a las disposiciones de nuestra Ley de Libelo y Calumnia que aún tienen vigencia, teniendo en mente el ideal de lograr un derecho propio o netamente puertorriqueño más atento a nuestras necesidades y aspiraciones." *Villanueva v. Hernández Class*, ante, pág. 642 esc. 13.

sabilidad absoluta en los casos en que el reclamante sea "figura privada". En otras palabras, en nuestra jurisdicción rige la norma que exige responsabilidad, basada en negligencia, en todas las acciones en daños por libelo instadas por personas privadas. *Torres Silva v. El Mundo, Inc.*, 106 D.P.R. 415, 422 (1977); *Romany v. El Mundo, Inc.*, 89 D.P.R. 604 (1963). De esta manera, se eliminó en esta jurisdicción la responsabilidad absoluta o sin falta que surgía de nuestra Ley de Libelo y Calumnia.([10])

La acción por difamación (libelo y calumnia) es una de "resarcimiento de daños dirigida a vindicar el interés social en la reputación de la persona ...". *Torres Silva v. El Mundo, Inc.*, ante, pág. 423. El demandante en un caso de libelo debe probar que la información o expresión publicada es falsa y difamatoria,([11]) y que por causa de su publicación sufrió daños reales. *Torres Silva v. El Mundo, Inc.*, ante, pág. 427. En el caso ante nos, siendo el demandante una figura privada, debe establecer que la publicación se hizo negligentemente, *González Martínez v. López*, 118 D.P.R. 190, 192–193 (1987), según este concepto es entendido en el campo del derecho de daños y perjuicios. En síntesis, cuando el demandante "es figura privada y el demandado es ajeno al medio noticioso y está presente el

---

([10]) En cuanto a la responsabilidad sin falta, ésta ocurría de la siguiente manera: si el reclamante establecía que la expresión era libelosa per se, entonces, se presumía la malicia en la publicación; y si el demandado no podía probar algunas de las defensas disponibles como los privilegios estatutarios de 32 L.P.R.A. secs. 3144 y 3145, entonces ahí terminaba el caso a favor del demandante. Solamente, por ejemplo, si el demandado establecía que la expresión difamatoria era privilegiada, era que el demandante tenía que probar la malicia en la publicación con prueba independiente a la misma.

([11]) Aunque en una acción libelosa privada no es de aplicación el requisito de malicia en la publicación, y sí el de negligencia, no obstante, es importante señalar que la expresión dicha o publicada deberá ser injuriosa e infamatoria según lo contempla la Sec. 2 (32 L.P.R.A. sec. 3142) de la Ley, o sea, que tiene que ser infamatoria en cuanto a su carácter y sus efectos dañosos. Véase H. Brau del Toro, *Los daños y perjuicios extracontractuales en Puerto Rico*, 2da ed., San Juan, Pubs. J.T.S., 1986, Vol. II, pág. 988.

ejercicio de la libertad de expresión, para que la acción prospere el primero debe demostrar la existencia de negligencia ...". *González Martínez v. López*, ante, pág. 196.[12]

## III

Surge con meridiana claridad que uno de los elementos esenciales de la causa de acción por libelo entre personas privadas lo es la *"publicación"* de la expresión falsa y difamatoria. *González Martínez v. López*, ante, pág. 192; *Torres Silva v. El Mundo, Inc.*, ante, pág. 427; H. Brau del Toro, *Los daños y perjuicios extracontractuales en Puerto Rico*, 2da ed., San Juan, Pubs. J.T.S., 1986, Vol. II, págs. 986–989. El elemento de publicación se configura cuando la expresión difamatoria es comunicada a una ter-

---

[12] El Tribunal Supremo federal en *Gertz v. Robert Welch, Inc.*, 418 U.S. 323 (1974), determinó que si el reclamante era una persona privada, los estados podían elaborar una norma de responsabilidad menos exigente que la de *New York Times Co. v. Sullivan*, 376 U.S. 254 (1964), siempre que no sea la de responsabilidad sin falta.

Cabe señalar, sin embargo, que la decisión del Tribunal Supremo de los Estados Unidos en *Dun & Bradstreet, Inc. v. Greenmoss Builders*, 472 U.S. 749 (1985), levanta serias dudas sobre la validez actual de la norma de *Gertz v. Robert Welch, Inc.*, ante, en cuanto impone un mínimo de responsabilidad (*e.g.*: negligencia) en los casos en que el demandante sea una figura privada. Comentaristas legales en Estados Unidos entienden que luego de este caso, aunque no está resuelto directamente, los estados pueden volver a la norma tradicional de responsabilidad sin falta (Pre-Gertz) en casos en que el demandante es una figura privada y la expresión difamatoria no envuelve un asunto de interés público o general. Véanse: *Fault Requirements for Defamation (Law of Defamation)* (CBC) Secs. 3.02[5]–3.10 (1986); 2 *Harper, James and Gray, The Law of Torts* Sec. 5.0, pág. 2–24 (1986); Middleton, *Employers Face Upsurge in Suits over Defamation*, The Nat'l L.J. (4 de mayo de 1987); A.M. Barry, *Defamation in the Workplace: The Impact of Increasing Employer Liability*, 72 Marq. L. Rev. 264 (1989); D.R. Matthews, *American Defamation Law: From Sullivan, Through Greenmoss, and Beyond*, 48 Ohio St. L.J. 513 (1987); J.B. Lewis, B.L. Ottley y G.V. Mersol, *Defamation and the Workplace: A Survey of the Law and Proposals for Reform*, 54 Mo. L. Rev. 797 (1989); J. Boykin, *Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.: Does the Actual Malice Standard of Gertz v. Robert Welch, Inc. Apply to Speech on Matters of Purely Private Concern?*, 14 Pepp. L. Rev. 337 (1987); 3 *Restatement of the Law (Second) of Torts* Sec. 580B (1977). En Puerto Rico, sin embargo, hemos mantenido el requisito de negligencia para todas las acciones en que el reclamante sea persona privada. *González Martínez v. López*, 118 D.P.R. 190, 196 (1987).

cera persona, o sea, a otra distinta de la difamada.($^{13}$) Por tal razón, las palabras o expresiones difamatorias hechas a la propia persona difamada no constituye publicación, a menos que un tercero se entere de la comunicación. *Mulero v. Martínez*, 58 D.P.R. 321 (1941); *Irizarry v. Porto Rico Auto Corporation*, 60 D.P.R. 1, 5 (1942); *Jiménez v. Díaz Caneja*, 14 D.P.R. 9 (1908); Brau del Toro, *op. cit.*; J. Elías Rivera, *El elemento de publicidad en una acción difamatoria por calumnia entre personas privadas bajo una estructura mercantil*, Año XXX Rev. Der. Pur. 37, 45 (1990); *Fault Requirements for Defamation (Law of Defamation)* (CBC) Sec. 4.12[1], págs. 4-58 a 4-59 (1988); *3 Restatement of the Law (Second) of Torts* Sec. 577 (1977); W.P. Keeton, *Prosser and Keeton on Torts*, 5ta ed., Minnesota, Ed. West Publishing Co., 1984, pág. 797. Por otro lado, la regla general es a los efectos de que el elemento de la publicación no se configura cuando es la propia persona afectada quien comunica la expresión difamatoria a terceros.($^{14}$) *Restatement*

---

($^{13}$) Entiéndase que la comunicación difamatoria se efectúa a través de cualquier forma de "escrito, impreso, signo, retrato, figura, efigie u otro medio mecánico de publicación, tendente a exponer a dicha persona al odio del pueblo ... o a perjudicarle en sus negocios ...". 32 L.P.R.A. sec. 3142. En adición "[p]ara sostener el cargo de haber publicado un libelo, no es necesario que las palabras objeto de la demanda hayan sido leídas por persona alguna; será prueba suficiente del hecho el que el acusado, a sabiendas, haya dejado o expuesto el libelo de tal manera que éste haya podido ser leído por cualquier otra persona". 32 L.P.R.A. sec. 3148. En *Jiménez v. Díaz Caneja*, 14 D.P.R. 9, 10 (1908), expresamos que "no es necesario que la comunicación esté dirigida a la persona objeto del libelo, pues generalmente estas comunicaciones se dirigen a una persona distinta, y su publicación queda efectuada cuando se muestran por ésta a un tercero".

($^{14}$) Como excepción a esta norma general, en el campo laboral ha surgido la doctrina de *compelled self-publication*. Dicha doctrina permite al empleado despedido satisfacer el requisito de publicación, si al buscar nuevo empleo de alguna manera está obligado a revelar o repetir la razón de su despido (que contiene información difamatoria) al patrono prospectivo y, por último, que el patrono original le era previsible que dicha comunicación se llevaría a cabo. De esta manera, el patrono original es responsable por la difamación aunque la expresión libelosa sea publicada a terceros por el demandante exclusivamente. En el presente caso, es innecesario que nos expresemos acerca de si adoptamos en esta jurisdicción dicha doctrina, ya que el demandante no aportó prueba alguna que demostrase que al buscar nuevo empleo vino obligado a revelar las razones del despido. Las comunicaciones si algunas, que tuvo con otros posibles patronos son meramente especulativas. Transcrip-

*of the Law (Second) of Torts,* ante; Smolla, *op. cit.,* Sec. 4.12[4], pág. 4-60; *Harper, James and Gray,* ante, Sec. 5.15, pág. 122.

 Con estos principios en mente, *pasamos a examinar cómo se configura el elemento de publicación en una entidad corporativa, y, por consiguiente, si la parte demandante en el presente caso estableció el hecho de la "publicación" de la carta de despido.* En primer lugar, en el ámbito patrono-empleado, cualquier comunicación "externa" de la expresión libelosa, por parte de la empresa a una persona distinta del empleado afectado, automáticamente configura el elemento de la publicación. *Fault Requirements for Defamation (Law of Defamation),* ante, Sec. 15.02[1], pág. 15-5. La dificultad estriba en determinar si hay publicación en las llamadas "comunicaciones intracorporativas".

La *posición minoritaria* que rige en algunos de los tribunales estatales norteamericanos es a los efectos de que las comunicaciones intracorporativas no constituyen publicación a terceros. Se ha dicho, en apoyo de dicha posición minoritaria, que no hay "publicación" en las comunicaciones habidas entre los oficiales, gerentes o agentes y empleados de una corporación, ya que la corporación "se está comunicando asimisma". *K-mart Corp. Inc. v. Pendergrass,* 494 So. 2d 600 (1986); *Halsell v. Kimberly-Clark Corp.,* 683 F.2d. 285 (8vo Cir. 1982); *Jones v. Golden Spike Corp.,* 623 P.2d 970 (Nev. 1981); *Monahan v. Sims,* 294 S.E.2d 548 (1982); *Commercial Union Ins. Co. v. Melikyan,* 424 So. 2d

---

ción de la Evidencia, págs. 38–39. Véanse: J. Elías Rivera, *El elemento de publicidad en una acción difamatoria por calumnia entre personas privadas bajo una estructura mercantil,* Año XXX Rev. Der. Pur. 37, 45 (1990); *Lewis v. Equitable Life Assur. Soc.,* 389 N.W.2d 876 (1986); *McKinney v. County of Santa Clara,* 110 Cal.App.3d 787, 168 Cal. Rptr. 89 (1980); *Colonial Stores, Inc. v. Barrett,* 38 S.E.2d 306 (1946); *Grist v. Upjohn Company,* 168 N.W.2d 389 (1969); Anotación, *Publication of Allegedly Defamatory Matter By Plaintiff ("Self-Publication") As Sufficient to Support Defamation Action,* 62 A.L.R.4th 616 (1988), y casos allí citados; A.W. Langvardt, *Defamation in the Employment Discharge Context: The Emerging Doctrine of Compelled Self-Publication,* 26 Duq. L. Rev. 227 (1988); Barry, ante; Smolla, *op. cit.,* Secs. 15.02[3][a]–15.02[3][c], págs. 15-8 a 15-13 (1988).

1114 (1982); *Prins v. Holland-North America Mortgage Co.*, 181 P. 680 (1919).([15])

En contraposición, *la mayoría de los estados* han adoptado la norma, sugerida por el *Restatement of the Law (Second) of Torts* y el profesor Prosser, a los efectos de que se configura el elemento de publicación en las comunicaciones habidas entre los miembros de la corporación. *Restatement of the Law (Second) of Torts*, ante; Comentario i; Keeton, *op. cit.*, Sec. 113, págs. 798–799; *Fault Requirements for Defamation (Law of Defamation)*, ante, Sec. 15.02[2][b], págs. 15-7 a 15-8; *Luttrell v. United Telephone System*, 683 P.2d 1292 (Kan. 1984); *Frankson v. Design Space Intern.*, 394 N.W.2d 140 (1986); *Cashio v. Holt*, 425 So. 2d 820 (1983); *Pirre v. Printing Developments, Inc.*, 468 F. Supp. 1028 (S.D. N.Y. 1979); *Welch v. Chicago Tribune Company*, 340 N.E.2d 539 (1975).([16]) La razón de ser de esta posición es que los empleados de una corporación son seres humanos y que al enterarse de la expresión difamatoria, la reputación del empleado afectado claramente se ve menospreciada en su trabajo.

▬▬▬ Luego de analizar cuidadosamente las diferentes fuentes legales, *somos del criterio que la posición mayoritaria esbozada anteriormente está más a tono con nuestras necesidades, aspiraciones y nuestro sentido de hacer justicia.* No cabe la menor duda que las expresiones falsas y difamatorias que haga un oficial corporativo respecto a un empleado en particular, de advenir al conocimiento de

---

([15]) Véanse, en adición: *Fault Requirements for Defamation (Law of Defamation)*, ante, Sec. 15.02[2][a] (1988); 3 *Restatement of the Law (Second) of Torts* Sec. 577 (1977), Anotación, *Defamation: Publication By Intracorporate Communication of Employee's Evaluation*, 47 A.L.R.4th 674 (1986); Decisiones Recientes, *Tort—Libel and Slander—Communications Between Employees of Company Concerning Company Business Held Sufficient Publication to Subject Company To Liability*, 38 Va. L. Rev. 400 (1952).

([16]) Véanse, en adición: Barry, ante; Anotación, *Defamation: Publication By Intracorporate Communication of Employees Evaluation*, ante; Nota, *Libel and Slander—Intracorporate Communications as Publication to Third Persons—Luttrell v. United Telephone System*, 33 U. Kan. L. Rev. 759 (1985).

los restantes empleados de la empresa, afecta la opinión y el respeto que tienen éstos respecto al empleado en controversia.([17]) Cabe citar la expresiones vertidas en el caso de *Pierre v. Printing Developments, Inc.*, ante, pág. 1041:

> While corporate officers may be ... the embodiment of the corporation, they remain individuals with distinct personalities and opinions, which opinions may be affected just as surely as those of other employees by the spread of injurious falsehoods. It is this evil that the law of defamation is designed to remedy. To find no inter-personal communication when a corporate employee speaks to a corporate officer would be to ignore the distinct personalities of the human beings involved.

En adición, somos del criterio que donde más expuesto está un empleado a sufrir un daño a su reputación como consecuencia de imputaciones falsas y libelosas es en su lugar de trabajo o negocio. Las comunicaciones intracorporativas, que tengan el efecto de degradar o menospreciar la reputación de un empleado, claramente afectarán las relaciones de éste con los otros miembros de la corporación y, posiblemente, de la comunidad en que vive. *Resolvemos, en consecuencia, que la reputación de una persona en su empleo puede ser menospreciada mediante cualquier comunicación intracorporativa y, si hay prueba de la misma, el elemento de publicación queda satisfecho.*

De la transcripción de la evidencia sometida en el caso de autos se desprende con claridad que la parte demandante *no* aportó prueba alguna a los efectos de que el demandado recurrente hubiera hecho comunicaciones externas, o sea, a personas ajenas a la compañía, acerca de la

---

([17]) Como bien señala el autor Rodney Smolla, bajo esa doctrina la única expresión intracorporativa que no daría base a la publicación sería el caso en que la expresión libelosa se efectuare solamente entre el oficial corporativo y el empleado sin ninguna prueba de terceros presentes en la reunión o que la información difamatoria hubiera sido leída por otros miembros de la corporación. *Fault Requirements for Defamation (Law of Defamation)*, ante, Sec. 15.02[3][a], pág. 15-8 (1988).

alegada expresión difamatoria (carta de despido).([18]) La *única prueba* de la "publicación" de la carta de despido son los hechos acaecidos en la reunión en que se despidió al demandante, Iván Porto.

La prueba refleja con sencilla claridad que en dicha reunión el Sr. Luis Berga le entregó la carta de despido al señor Porto. El contenido de la carta fue discutido ampliamente no sólo entre el demandante y su jefe, el señor Berga, sino que estaba presente otro miembro de la corporación, la Srta. Elvira Alfonso, *quien era la Administradora de Personal de la misma.*([19]) A base de ello se alega

---

([18]) En el contrainterrogatorio del demandante, Iván Porto, el abogado del demandado le preguntó lo siguiente:

"LCDO. IRIZARRY:

"P– Muy bien. Testigo, es o no cierto que desde que se efectuó el despido suyo en la compañía, usted no tiene información, o sea, no ha habido ningún oficial ni ejecutivo, ni supervisor, ni representante de la empresa que haya estado divulgando públicamente ante otras la razón del despido suyo?

"TESTIGO:

"R– Desconozco. Si lo han hecho, desconozco y si no, desconozco.

"P– ¿Es o no cierto que hasta el día de hoy la compañía Bentley no ha enviado la información a nadie, a ninguna empresa, entidad o persona por escrito o verbalmente de las razones que hubo sobre su despido?

"TESTIGO:

"R– Yo sé, yo no puedo saber lo que están haciendo la gerencia, lo que están haciendo allí arriba porque verdaderamente no es...

"P– ¿Usted no conoce?

"R– No, desconozco.

"LCDO. IRIZARRY:

"P– Testigo, le consta a usted si algún familiar suyo, su esposa o sus hijos, sabe o tienen información de que [sic] la empresa algunos de su ejecutivos, oficiales o supervisores haya hecho manifestaciones en contra suya.

"LCDO. ALCARAZ: [Abogado del demandante]

"Señoría, si es para fines de establecer el hecho, nosotros estipulamos que no tenemos prueba alguna en el sentido de que ni la compañía ni el gerente haya en forma alguna divulgado que fue despedido por haber hurtado propiedad de la compañía." Transcripción de evidencia, págs. 65–66.

([19]) En el contrainterrogatorio del demandante se le hicieron las siguientes preguntas:

[LCDO. IRIZARRY:]

"P– Cuando a usted se le entrega la carta de despido, ¿qué personas estaban presentes en esa reunión?

que se estableció prima facie el hecho de la "publicación" de la carta de despido. *No estamos de acuerdo*; era completamente *lógico y razonable* que dicha ejecutiva participara en la referida reunión. No podemos concebir que el jefe de personal de una empresa no esté al tanto de las personas que se reclutan y de los empleados que se despiden de la misma.

## IV

Aun asumiendo, *a los fines de la argumentación*, que la carta de despido contenga información que es falsa y difamatoria y que la misma en efecto fue objeto de "publicación", ese hecho no da "base para una acción de libelo por ser la publicación privilegiada de acuerdo con las Secs. 4 y 5 de nuestra ley de libelo y calumnia.([20]) 32

---

"R– Estaba el Sr. Luis Berga.

. . . . . . . .

"P– ¿Qué otra persona había presente, si alguna otra, en adición a usted?

"R– ¿En el momento de entregar la carta? Solamente estábamos él y yo. Más tarde vino la señora Lorenzo, o Srta. Lorenzo.

"P– Más tarde vino...?

"R– Elvira Lorenzo.

"P– Es o no cierto que ella, doña Elvira estaba en ese tiempo a cargo de personal?

"R– Sí, estaba...era la persona que estaba al frente de...

"P– Y nadie más aparte de usted y esas dos personas estuvieron presentes durante la conversación, eh...en la cual se habló de su despido, ¿correcto?

"R– Sí, eso es así." Transcripción de evidencia, págs. 41–42.

En el directo del Sr. Luis Berga, el abogado le hizo la pregunta siguiente:

"LCDO. IRIZARRY:

"Testigo, en el momento en que ocurre el despido podría usted relatarnos qué ocurrió?

"TESTIGO:

"Si, eso fue un viernes por la tarde, se trajo al Sr. Porto a mi oficina ... conversamos sobre ... exactamente sobre el contenido de la carta. Estuvimos por espacio de tres horas hablando de eso en par ... en parte de ... la conversación participó la Srta. Elvira Alfonso que era la ... Administradora de Personal, y se fue sobre el contenido de la carta ...." Transcripción de evidencia, págs. 84–85.

([20]) Sec. 3144:

"No se tendrá por maliciosa, ni como tal se considerará la publicación que se hace en un procedimiento legislativo, judicial, u otro procedimiento cualquiera auto-

L.P.R.A. secs. 3144–3145". *Bosh v. Editorial El Imparcial, Inc.*, 87 D.P.R. 285, 304 (1963). Véanse: *Díaz v. P. R. Ry., Lt. & P. Co.*, 63 D.P.R. 808, 811 (1944); *Quiñones v. J.T. Silva Banking & Commercial Co.*, 16 D.P.R. 696 (1910). Nuestro estatuto, siguiendo el derecho común anglosajón, estableció diversos tipos de comunicaciones privilegiadas, algunas de las cuales eran absolutas y otras solamente condicionales o restringidas. *Díaz v. P.R. Ry., Lt. & P. Co.*, ante, pág. 811; *Villanueva v. Hernández Class*, ante. A tales efectos, hemos expresado que la doctrina de los privilegios en Puerto Rico es más restrictiva que en otras jurisdicciones del derecho común y, en adición, que la misma es puramente estatutaria. *Bosh v. Editorial El Imparcial, Inc.*, ante, pág. 305; *Díaz v. P.R. Ry., Lt. & P. Co.*, ante.

▆▆▆▆▆ La doctrina de inmunidad condicional o restringida está fundada en la política pública de "conciliar el interés en la reputación individual y otros intereses igualmente legítimos". *Cortés Portalatín v. Hau Colón*, ante, pág. 739. A esos efectos, hemos señalado que "una [información] privilegiada es aquella que, a no ser por la ocasión o las circunstancias, sería difamatoria y sujeta a reclamación". *Díaz v. P.R. Ry., Lt. & P. Co.*, ante, pág. 811. La comunicación puede ser falsa, pero el privilegio persiste. *Quiñones v. J.T. Silva Banking & Commercial Co.*, ante; *Cortés Portalatín v. Hau Colón*, ante.

▆▆▆ De igual forma, "[e]l privilegio condicional com-

---

rizado por la ley. No se presumirá que es maliciosa la publicación que se hace:

"Primero: En el propio desempeño de un cargo oficial;

"Segundo: En un informe justo y verdadero de un procedimiento judicial, legislativo u oficial, u otro procedimiento cualquiera, o de algo dicho en el curso de dichos procedimientos;

"Tercero: A un funcionario oficial, apoyada en causa probable, con la intención de servir al procomún, o de conseguir remedio a un perjuicio hecho a un particular."

[Sec. 3145.] "Se presumirá que existe malicia en cualquier comunicación o escrito infamatorio o calumnioso que se dirija a otra persona que no sea un pariente dentro del tercer grado, o a una persona a quien el autor tenga bajo su tutela, o cuando dicha comunicación se cruce entre personas que tengan negocios en sociedad, u otra asociación semejante."

prende la publicación de toda comunicación hecha de buena fe en relación con un asunto en que el autor tiene interés o con respecto al cual tiene un deber que cumplir hacia otros. Se le considera condicional porque la persona que lo utiliza deberá hacerlo de acuerdo con la ley y para un fin apropiado". *Caraballo v. P.R. Ilustrado, Inc.*, 70 D.P.R. 283, 291 (1949); *Restatement of the Law (Second) of Torts*, ante, Secs. 594–598.

Por otro lado, la inmunidad condicional *"se pierde"* si la parte demandada *"abusa del privilegio"*. En *Cortés Portalatín v. Hau Colón*, ante, pág. 739, señalamos que el privilegio se desvanece si "la comunicación se entabla con quien no existe razón para creer que puede proteger el interés del actor o de la comunidad, según sea el caso; o si el actor le imparte publicidad excesiva al asunto; o si el actor se mueve por motivos impropios. El hecho de que otras personas escuchen o lean incidentalmente una comunicación hecha de modo razonable no anula el privilegio". (Citas omitidas.)

En el ámbito obrero-patronal, el derecho común ha reconocido la necesidad e importancia de la inmunidad condicional para promover el libre flujo de comunicación entre patrono y empleado. La existencia del privilegio restringido se ha extendido a diferentes modos de comunicación en el trabajo. Aunque la existencia de éste se determina caso a caso, *a manera ilustrativa*, las siguientes comunicaciones han sido consideradas condicionalmente privilegiadas: comunicaciones del "patrono" a gerentes o supervisores de un empleado despedido, informándoles las razones del despido; comunicaciones hechas a patronos prospectivos informándoles la razón del despido del empleado; manifestaciones hechas en las hojas de evaluación de rendimiento de un empleado; dando información de referencia acerca de un empleado a otros patronos potenciales; comunicaciones entre supervisores y em-

pleados de personal. Véanse: Anotación, *Libel and Slander: Privileged Nature of Communication to other Employees or Employees' Union of Reasons for Plaintiff's Discharge*, 60 A.L.R.3d 1080 (1974), y casos allí citados; Duffy, *Defamation and Employer Privilege*, 9 Employee Rel. L.J. 444 (1983); Martin & Bartol, *Potential Libel and Slander Issues Involving Discharged Employees*, 13 Employee Rel. L.J. 43 (1987); A.M. Barry, *Defamation In The Workplace: The Impact of Increasing Employer Liability*, 72 Marq. L. Rev. 264 (1989), y casos allí citados; J.B. Lewis, B.L. Ottley y G.V. Mersol, *Defamation and the Workplace: A Survey of the Law and Proposals for Reform*, 54 Mo. L. Rev. 797 (1989), y casos allí citados; *Fault Requirements for Defamation (Law of Defamation)*, ante, Sec. 15.07[2][a].

■ En el caso ante nos, el demandado recurrente arguye que es de aplicación el privilegio restringido de la Sec. 5 (32 L.P.R.A. sec. 3145).[21] En lo pertinente, dicha sección establece que no se presumirá la malicia en las comunicaciones habidas "entre personas que tengan negocios en sociedad, u otra asociación semejante". En *Quiñones v. J.T. Silva Banking & Commercial Co.*, ante, analizamos el alcance y significado de este privilegio. En *Quiñones v. J.T. Silva Banking & Commercial Co.*, ante, uno de los directores de la sociedad demandada consignó una información difamatoria sobre un empleado en un asiento del libro del diario de operaciones, en la cual le imputaba el apropiarse ilegalmente de fondos de la sociedad. Aunque el propósito legítimo de copiar dicho asunto era que los diferentes accionistas, directores, socios y otras partes interesadas tuvieran conocimiento de dicha información, la información llegó a conocimiento de otros dependientes o

---

[21] En cuanto a la Sec. 5 (32 L.P.R.A. sec. 3145), es importante señalar que la Legislatura limitó el alcance de los privilegios restringidos del derecho común a cuatro clases de comunicaciones. Por tal razón, este Tribunal está impedido de importar otros privilegios del derecho común, ya que dicha tarea le compete a la propia Legislatura. *Díaz v. P.R. Ry., Lt. & P. Co.*, ante, pág. 815–816.

empleados. No obstante, este Tribunal resolvió que el asunto de referencia era una comunicación privilegiada. A esos efectos, expresamos que

> ... es absolutamente necesario que una casa de comercio o compañía que hace negocios de gran magnitud, emplee un número de dependientes más o menos grande, [y por consiguiente es], indispensable incluir dichos dependientes o empleados en la clase de personas que ocupan una posición análoga a la de los socios [que señala la sec. 3145]. El hecho de que el asunto ofensivo fuera leído y comentado por los dependientes y empleados en la casa bancaria de los demandados, era un mero incidente de la existencia del mismo asunto, y no constituye una publicación ilegal [o publicación no privilegiada]. *Quiñones v. J.T. Silva Banking & Commercial Co.,* ante, pág. 701.

Claramente, la ocasión de efectuar el despido de un empleado es un *evento legítimo* que puede llevar a cabo un patrono. Para el buen funcionamiento del negocio o empresa, existe, por consiguiente, *un interés legítimo de poder comunicar libremente a aquellas personas con derecho a conocer o a estar informadas, las razones del despido de un empleado.*

En autos, el Sr. Luis Berga, como gerente y supervisor de la recurrente, tenía el deber de disciplinar a sus empleados y poner en vigor las normas de conducta de la empresa. A esos efectos, éste era *la persona con interés* en la comunicación, o sea, *la persona adecuada* para llevar a cabo el despido y explicarle las razones del mismo al demandante. *Igualmente, y como parte inherente de sus funciones, era legítimo que el contenido de la carta llegara a conocimiento de la Administradora de Personal de la Compañía.* En resumen, las personas que tuvieron conocimiento de la carta de despido *eran partes interesadas que cumplían con su deber, y a la vez dicha comunicación era necesaria para el libre flujo de información dentro de la empresa.*

Somos del criterio que, bajo los hechos de este caso, no hubo "publicación" de la carta de despido en controversia;

pero, aun de haberla habido, la misma estaba condicionalmente privilegiada. Más aún, la prueba demuestra que la comunicación aquí envuelta fue mucho más limitada que la efectuada en *Quiñones v. J.T. Silva Banking & Commercial Co.,* ante, ya que el contenido de la carta no fue divulgado a otros empleados que no eran partes interesadas en dicha comunicación.

Por otro lado, no hay base alguna en el récord para concluir que la parte recurrente abusara de dicho privilegio. Ante esa situación, forzoso es concluir que erró el tribunal de instancia al responsabilizar a la corporación recurrente por difamación o injuria.

Por las razones anteriormente expuestas, *se deberá dictar Sentencia revocatoria de la emitida en el presente caso por el tribunal de instancia.*

El Juez Asociado Señor Alonso Alonso emitió una opinión concurrente. El Juez Asociado Señor Fuster Berlingeri emitió una opinión disidente.

— O —

Opinión concurrente emitida por el Juez Asociado Señor Alonso Alonso.

Concurro con el resultado a que llega la opinión mayoritaria del Tribunal, pero por razón de que los demandantes *no probaron* que el demandado fuera *negligente* o existiera relación causal entre ésta y el supuesto daño *bajo las disposiciones del* Art. 1802 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 5141. Me explico.

La demanda instada por el demandante fue al amparo del Art. 1802, *supra.* La Sentencia dictada por el tribunal de instancia también fue al amparo de dicha disposición. Véase la pág. 7 de la sentencia (Apéndice, pág. 8).

En este caso no es necesario recurrir al articulado de la

Ley de Libelo y Calumnia, 32 L.P.R.A. sec. 3141 *et seq.*, pues se trata de una *persona privada* que insta una acción común y corriente de daños y perjuicios contra su patrono, acción que hemos autorizado en *Rivera v. Security Nat. Life Ins. Co.*, 106 D.P.R. 517, 527 (1977), en las acciones instadas en relación con la Ley Núm. 80 de 30 de mayo de 1976 (29 L.P.R.A. secs. 185a–185m). Equivocadamente, una vez más la mayoría de este Tribunal recurre a la Ley de Libelo y Calumnia para dilucidar las acciones cobijadas por el Art. 1802 del Código Civil de Puerto Rico, *supra*.

Ya en *Méndez Arocho v. El Vocero de P.R.*, 130 D.P.R. 867 (1992), opinión disidente, censuramos esta práctica de confinar estas acciones en daños a los ya superados preceptos de la Ley de Libelo y Calumnia de 1902, obviando la razón de pedir de los demandantes al amparo del Art. 1802 del Código Civil, *supra*. Allí, citando las palabras del profesor Serrano Geyls, señalamos que la tendencia moderna de este Tribunal era adjudicar los casos bajo las doctrinas constitucionales aplicables y el Art. 1802 del Código Civil, *supra*. Hoy, nuevamente, este Tribunal adjudica la reclamación en autos bajo los preceptos de la ley de 1902, extraños a nuestro ordenamiento civilista.

Por lo anterior es innecesario entrar a considerar si la comunicación se hizo pública al amparo de la Ley de Libelo y Calumnia, si ésta es privilegiada o si se hizo de forma maliciosa.

Debo destacar, además, que la opinión de la mayoría del Tribunal utiliza la norma de *negligencia* al analizar el presente caso bajo la Ley de Libelo y Calumnia. En la opinión del Tribunal se expresa lo siguiente: "En otras palabras, en nuestra jurisdicción rige la norma que exige responsabilidad, *basada en negligencia*, en *todas* las acciones *en daños por libelo instadas por personas privadas*". (Énfasis suplido.) Opinión mayoritaria, pág. 345.

Sin embargo, hace unos meses atrás, el 29 de junio de 1992, al resolver el caso *Méndez Arocho v. El Vocero de*

*P.R.*, supra, el cual trataba de personas privadas que demandaron en daños y perjuicios, y en el cual este Tribunal aplicó equivocadamente la Ley de Libelo y Calumnia, al enfrentarse al problema de que dicha ley requiere que el demandante pruebe la intención del demandado cuando se difama a una persona fallecida, este Tribunal expresó que el demandante tenía que probar "que el demandado actuó de manera *intencional* o *con negligencia crasa y grave menosprecio de la verdad*". (Énfasis suplido.) Ello es una norma distinta para los casos en que se difama a una persona fallecida.

En vez de tener normas distintas —con la confusión que ello crea— para lo que simple y llanamente es una acción en daños y perjuicios de una persona privada, es más sensato sostener que todas estas acciones se rigen por el Art. 1802 del Código Civil, *supra*, y aplicarle una norma uniforme: la de negligencia.

Por otra parte, en este caso el patrono simplemente no fue negligente al despedir a uno de sus empleados conforme a las disposiciones de la Ley Núm. 80, *supra*, en la forma en que lo hizo. ¿De qué otra manera lo hubiera podido hacer? Obviamente tenía que notificar de su acción de despido al afectado, indicándole la razón para ello, y a la jefa de personal de la empresa. Ante tales hechos tampoco existe relación causal entre la acción del patrono y los alegados daños mentales y aprehensiones del demandante.

Por todo lo anterior, concurro con el resultado.

— O —

Opinión disidente emitida por el Juez Asociado Señor Fuster Berlingeri.

En este caso, un empleado de una compañía que tenía autorización expresa para utilizar un vehículo propiedad de ésta, no sólo fue despedido fulminantemente por hacer

tal uso de dicho vehículo, sino que además tuvo que sufrir que en su carta de despido, que es conocida por compañeros de trabajo y forma parte permanente de su expediente en esa compañía, se le imputara falsamente la comisión del delito de apropiación ilegal.[1]

En su opinión, la mayoría de este Tribunal claramente reconoce que el contenido de la carta en cuestión era conocido por otros empleados de la empresa. En efecto, en el último párrafo de la parte III de la opinión mayoritaria se indica expresamente lo siguiente:

> El contenido de la carta fue discutido ampliamente no sólo entre el demandante y su jefe, el señor Berga, *sino que estaba presente otro miembro de la corporación*, la Srta. Elvira Alfonso, quien era la Administradora de Personal de la misma.[2] (Énfasis en el original suprimido y énfasis suplido.) Opinión mayoritaria, pág. 351.

Más aún, la mayoría también afirma que en tales circunstancias "[n]o cabe la menor duda que las expresiones falsas y difamatorias que haga un oficial corporativo respecto a un empleado en particular ... afecta la opinión y el respeto que tienen [los otros empleados] respecto al empleado en controversia" (opinión mayoritaria, págs. 349–350), añadiendo que "[l]as comunicaciones intracorporativas, que tengan el efecto de degradar o menospreciar la reputación de un empleado, *claramente afectarán las rela-*

---

[1] Tales fueron los hechos que el tribunal de instancia encontró probados. La mayoría de este Tribunal no hace expresión alguna al efecto de que el foro sentenciador haya incurrido en prejuicio o error grave en la apreciación de la prueba.

[2] Además de las dos personas de la empresa aludidas en la cita anterior, parecería lógico suponer que debe haber intervenido también al menos alguna secretaria en la preparación y archivo de la carta, como usualmente sucede en las empresas, y ésta también se habrá enterado directamente del asunto.

Tampoco debemos ignorar la realidad de las comunicaciones informales sobre estos asuntos en oficinas de trabajo en Puerto Rico. Un despido como el de marras es en nuestra experiencia precisamente el tipo de evento que genera comentarios y chismorreo entre compañeros de trabajo. Parafraseando la penetrante observación de ese eminente jurista puertorriqueño, Raúl Serrano Geyls, los jueces no debemos ser tan inocentes como para ignorar la experiencia común que es generalmente conocida.

*ciones de éste con los otros miembros de la corporación y, posiblemente, de la comunidad en que vive"* —(énfasis suplido) íd., pág. 350— resolviendo en consecuencia que "la reputación de una persona en su empleo puede ser menospreciada" —(énfasis suprimido) íd.— mediante tales comunicaciones intercorporativas.([3])

Lo anterior no obstante, la mayoría sorprendentemente nos dice que aun cuando la carta de despido contuviese información falsa y difamatoria, y la reputación del empleado hubiese sido menospreciada, no se puede responsabilizar al patrono por la injuria al empleado porque supuestamente nuestro ordenamiento jurídico establece un privilegio que permite que puedan realizarse comunicaciones intercorporativas difamatorias impunemente, para proteger "el libre flujo de información dentro de la empresa". (Énfasis suprimido.) Opinión mayoritaria, pág. 356. La mayoría del Tribunal, en efecto, le da carta blanca a los patronos para difamar y calumniar a sus empleados, en aras de "promover el libre flujo de comunicación entre patrono y empleado". Íd., pág. 354.

No veo cómo puede llegarse a ese insólito resultado a base de lo dispuesto en la Sec. 5 de la Ley de Libelo y Calumnia, 32 L.P.R.A. sec. 3145. *Esa sección no crea un privilegio de inmunidad.* La misma meramente establece

---

([3]) La posición de la mayoría respecto a si hubo o no "publicación" en este caso es realmente incomprensible. La mayoría dedica toda la extensa tercera parte de su opinión a discutir la doctrina anglosajona sobre qué constituye "publicación" como elemento esencial en una acción difamatoria, particularmente en el ámbito patronal. Como parte de dicha discusión, la mayoría expresa su rechazo a la posición adoptada por algunos tribunales supremos estatales de que no puede configurarse el elemento de "publicación" mediante comunicaciones *intracorporativas*. En su lugar, la mayoría adopta la posición contraria, sostenida también en numerosas jurisdicciones estatales norteamericanas y por los principales comentaristas de Estados Unidos, de que existe "publicación" si hay alguna comunicación intracorporativa que es libelosa. Sin embargo, después de fundamentar porqué adopta esta posición, y después de admitir expresamente que en este caso sí hubo al menos una tal comunicación intracorporativa, misteriosamente, sin explicar, la mayoría nos dice que no está de acuerdo con que aquí se haya establecido el elemento de "publicación", ni siquiera prima facie. La mayoría, pues, llega a una conclusión incoherente, ofuscando así la distinción doctrinal que antes había formulado tan afanosamente.

cuando existe una *presunción* de malicia y cuando no. El único efecto de tal presunción es que evita probar los daños causados. Si la presunción de malicia de dicha sección no aplica a la controversia concreta ante el Tribunal, *el demandado no queda por ello liberado de responsabilidad.* Puede ser aún responsable si el demandante en efecto prueba los daños causados. *Quiñones v. J.T. Silva Banking & Commercial Co.*, 16 D.P.R. 696 (1910). Se trata, pues, de una mera disposición sobre el *peso de la prueba,* no sobre inmunidad de reponsabilidad. *Jiménez v. Díaz Caneja*, 14 D.P.R. 9 (1908). Así expresa y diáfanamente lo explicamos en *Romany v. El Mundo, Inc.*, 89 D.P.R. 604 (1963), cuando resolvimos que la ley especial de libelo y calumnia de 1902 no impide la indemnización por daños causados si se demuestra que el demandado actuó negligentemente, aun cuando no fuesen aplicables las presunciones que establece dicha ley especial *"que alteran las normas de evidencia de ordinario aplicables en cuanto a la necesidad de probar un hecho o a quién corresponde el peso de la prueba".* (Énfasis suplido.) *Romany v. El Mundo, Inc.*, supra, pág. 618. Así también lo reiteramos más recientemente al indicar que, establecido el privilegio evidenciario de la Sec. 5 de la Ley de Libelo y Calumnia, *supra,* "el peso de la prueba ... recae enteramente sobre el demandante". *Cortés Portalatín v. Hau Colón*, 103 D.P.R. 734, 740 (1975).

Aun si pudiese demostrarse que el insólito resultado al que llega la mayoría del Tribunal en este caso es requerido por la vieja Ley de Libelo y Calumnia de 1902, ello no sería finalmente determinativo de la cuestión ante nos. Reiteradamente hemos dicho que a partir de 1952 no son sostenibles "muchas soluciones antiguamente derivables de la ley de 1902" porque desde esa fecha "[l]a fuente principal de la protección contra injurias es ... la Constitución, no la ley de 1902. Esta sobrevive tan sólo en cuanto es compatible con la Constitución". *Cortés Portalatín v. Hau Colón*, supra, pág. 738. Véanse: *García v. El Mundo, Inc.*, 108 D.P.R. 174 (1978); *Clavell v. El Vocero de P.R.*, 115 D.P.R. 685

(1984); *Villanueva v. Hernández Class*, 128 D.P.R. 618 (1991). No veo cómo puede la mayoría de este Tribunal reconocer una situación de claro ataque a la honra y reputación de una persona, que nuestra Constitución indudablemente repudia, y a la vez decir que tal ataque puede hacerse impunemente para proteger unas comunicaciones intercorporativas. Darle prioridad a tales comunicaciones a costa de la honra y reputación de un individuo constituye un claro menosprecio del patente mandato de la Constitución. Yo, por lo menos, no estoy dispuesto a poner una mera conveniencia patronal por encima del principalísimo valor de respeto a la persona humana que consagra nuestra Ley Fundamental. Por ello, disiento.