*675 TEXTO COMPLETO DE LA SENTENCIA
Comparece ante nos Tito Auto Parts, Inc. para solicitamos que revoquemos la sentencia emitida el 28 de enero de 2005 por el Tribunal de Primera Instancia, Sala Superior de Bayamón, que declaró con lugar la reclamación presentada por la parte apelada, la señora Madeline S. Batista Nieves, por discrimen, represalias y despido injustificado. La señora Batista Nieves fue despedida luego de presentar una querella ante el patrono apelante y posteriormente ante la oficina del Equal Employment Opportunity Commission (E.E.O.C.), por un alegado incidente de hostigamiento sexual por parte de un compañero empleado. Subsiguiente fue objeto de medidas disciplinarias por parte del patrono que terminaron con su despido. La apelada le imputó a Tito Auto Parts que tales sanciones fueron discriminatorias y que ocurrieron como represalia por las aludidas querellas.
Luego de concluir el juicio en su fondo, el foro sentenciador falló a favor de la empleada apelada. Determinó que el patrono apelante la despidió injustamente y que sus actos constituyeron la actuación por represalia que prohíbe la legislación laboral. Concedió a la señora Batista Nieves una indemnización de $20,000, cuantía que debe duplicarse por el tipo de acción incoada. Resolvemos confirmar la resolución apelada por los fundamentos que exponemos a continuación.
I
El 19 de marzo de 2001, la señora Batista Nieves inició sus labores como mensajera de Tito Auto Parts, Inc., bajo un contrato de jomada completa sin tiempo determinado. La compañía apelante se dedica a la venta de piezas de vehículos de motor. Para esa fecha, Tito Auto Parts tenía tiendas en Caguas, Bayamón y Hato Rey. En esta última se encontraban las oficinas centrales de la corporación y de su presidente, el señor Rafael Couto. La señora Batista inició sus labores en la tienda de Caguas, en la cual laboraban otras dos personas: el Gerente Héctor Narváez y el vendedor José David Sánchez. Ella realizaba las labores de mensajería y otras tareas misceláneas, según le requería el gerente. (T.P.O. de 25 de agosto de 2004, págs. 25 y 225; T.P.O. de 4 de octubre de 2004, págs. 6-7.)
El 4 de abril de 2001, luego de tres semanas de trabajo, la señora Batista recibió las “Normas de Trabajo del Delivery”. Este documento le explicaba que una mensajera, entre otras encomiendas, debía cumplir con el horario de trabajo estipulado; llenar la hoja de horario de la ruta diaria; desempeñar las tareas asignadas a diario; *676 mantener el vehículo limpio por dentro y por fuera; y notificar las tardanzas o ausencias con tiempo. (Apéndice xxxni del apelante, pág. 258.)
El 2 de mayo de 2002, más de un año después de comenzar a trabajar, se le entregó el “Manual de Personal”, que fue objeto de enmiendas en febrero del mismo año. (Véase Apéndice XXXI del apelante, pág. 212.)
En junio de 2002, la señora Batista presentó una queja por escrito ante el Gerente de la tienda de Caguas, señor Narváez, en contra del vendedor Sánchez, su compañero de labores, por hostigamiento sexual, consistente en acercamientos físicos no deseados. El señor Narváez comunicó el asunto al señor Couto, presidente de Tito Auto Parts, quien coordinó unas reuniones por separado con la apelada, el señor Sánchez y el señor Narváez. El señor Couto determinó que el señor Sánchez no había incurrido en conducta inapropiada hacia la señora Batista, aunque le entregó al querellado una advertencia escrita sobre la política de la compañía en tomo al hostigamiento sexual. Luego de esa reunión, la señora Batista notó un cambio negativo en la actitud de sus dos compañeros de trabajo hacia ella. Se sentía rechazada y recibía un trato hostil de parte de ellos. (T.P.O. de 4 de octubre de 2004, pág. 22.)
En la tarde del 5 de agosto de 2002, luego de un agrio incidente con el señor Narváez, la señora Batista decidió presentar una querella por discrimen en contra de su patrono ante la E.E.O.C. Alegó en su querella:
“Desde poco después de mi empleo, he sido sujeta a hostigamiento de naturaleza sexual de parte de otro empleado, el Sr. José D. Sánchez. El hostigamiento se manifestó con lenguaje, inuendo y acercamientos físicos no bienvenidos de mi parte. Me quejé ante el gerente de la tienda, el Sr. Héctor Narváez, el cual despachó mis alegaciones como ‘cosas de nenes chiquitos’. No se le dio importancia alguna a mi queja. El Sr. Sánchez tomó una actitud hostil contra mi persona desde entonces, la cual afectaba mi labor y mi trabajo tangiblemente.

Al ver que no se actuó sobre mi querella, hablé con el Sr. Rafael Couto, el dueño de la compañía, denunciando mi situáción. Desdé ese día, el trato del Sr. Narváez y el Sr. Sánchez empeoró. He notado que el trato hacia otros empleados varones es muy diferente al trato hacia mi persona... ”.

Apéndice V del apelante, pág. 6.
Después de que la apelada presentó su queja ante la E.E.O.C., Tito Auto Parts comenzó a amonestarla oralmente y por escrito por distintos incidentes. Le imputó el abandono del centro de trabajo y un recurrente ausentismo sin previa autorización. Por tales razones, el patrono la suspendió de empleo y sueldo desde el 7 hasta el 14 de agosto de 2002. En el ínterin, contra su voluntad, la transfirió a la tienda de Bayamón el 8 de agosto de 2002, donde inició sus labores como mensajera el 14 de ese mes y año. (T.P.O. de 4 de octubre de 2004, págs. 33, 35-38.)
En esta tienda trabajaban cinco empleados, entre los que se encontraban el Gerente, Luis Cedeño y su hermano, Pedro Cedeño, un vendedor. A diferencia de las prácticas realizadas en la tienda de Caguas, el Gerente de Bayamón obligaba a la señora Batista a cumplimentar un documento sobre datos de la entrega y el recogido de mercancía, lo que no exigía a los demás empleados que realizaban igual tarea. También le exigía otras tareas ajenas a su labor de mensajera.
Cuarenta días con antelación al despido de la apelada, el patrono apelante fue documentando el expediente personal de la apelada, mediante una serie de señalamientos de faltas que le comunicaban por cartas que ella debía firmar. Una de ellas se refiere a las entregas del 12 de septiembre de 2002. La señora Batista testificó que efectuó todas las entregas correspondientes, salvo una, ya que no halló al cliente que indicaba la factura en el área comercial, aunque se personó a la dirección señalada por su supervisor. No pudo comunicarse por teléfono con el patrono para informarlo y recibir orientación para terminar la encomienda. Aunque regresó a la tienda con ese *677 propósito, se le imputó que por su tardanza se había perdido la venta. Esa tarde se le entregó una carta para suspenderla nuevamente de empleo y sueldo por dos días laborables. Además, se le imputó que se negaba a llenar los formularios relativos a sus labores de mensajería y a no recoger la basura en el momento preciso en que así se lo ordenaba el supervisor. (T.P.O. de 4 de octubre de 2004, págs. 58-59; T.P.O. de 11 de octubre de 2004, págs. 64-66).
El 16 de septiembre de 2002, la señora Batista presentó la querella judicial, al amparo del procedimiento sumario establecido por la Ley 2 de 17 de octubre de 1961, 32 L.P.R.A. sees. 3118-3113. Solicitó los remedios conferidos en la Ley 69 del 6 de julio de 1985, 29 L.P.R.A. sees. 1321 et seq., y la Ley 115 de 20 de diciembre de 1991, 29 L.P.R.A. see. 194, ya que entendió que su despido file un acto de represalia por haber presentado la querella por hostigamiento sexual en junio de 2002 contra el empleado de la tienda de Caguas y en agosto del mismo año ante la E.E.O.C.
El 17 de septiembre de 2002, en horas del mediodía, el señor Cedeño recibió el emplazamiento con la copia de la querella presentada el día anterior. Esa misma tarde, después de las 4:30 p.m., el señor Couto le entregó a la apelada la carta de despido. Posteriormente, el 2 de junio de 2003, la señora Batista enmendó la querella para añadir la tercera causa de acción bajo el palio de la Ley 80 del 30 de mayo de 1976, según enmendada, 29 L.P.R. A. sec. 185a-185m.
El Tribunal de Primera Instancia acogió las alegaciones presentadas por la señora Batista. Como único remedio, condenó a Tito Auto Parts al pago de $20,000 por las angustias y sufrimientos mentales sufridos por la apelada, aunque la compensación final sería por el doble de esa partida, por disposición expresa de la Ley 69, ya citada, 29 L.P.R.A. sec. 1341(a)(1). Además, impuso al apelado el pago de 25% de la cuantía fijada por concepto de honorarios de abogado, más las costas y los intereses legales devengados.
Inconforme con tal dictamen, Tito Auto Parts acude ante nos y señala que el foro apelado incurrió en los siguientes errores: (1) invertir el peso de la prueba; (2) concluir que el despido fue sin justa causa, en contravención de la Ley 80 de 30 de mayo de 1976 y la jurisprudencia del Tribunal Supremo, y al llegar a conclusiones no sostenidas por la evidencia; (3) concluir que existió represalia en el despido de la apelada, sin seguir los criterios establecidos por el Tribunal Supremo para esta situación; (4) valorar en $20,000 los sufrimientos y las angustias mentales de la apelada, cifra que se eleva a $40,000, por la penalidad impuesta por el tribunal a quo.
Examinemos las normas aplicables a las distintas controversias que ha planteado el apelante en el orden en que han sido presentadas.
II
La Ley 80 adoptó un remedio de compensación económica a aquellos empleados que han sido despedidos sin justa causa. La ley define despido como la “suspensión indefinida o por un término que exceda de tres meses y la renuncia del empleo motivada por actuaciones del patrono dirigidas a inducirlo o forzarlo a renunciar”. 29 L.P.R.A. sec. 185e; Díaz v. Wyndham Hotel Corp., 155 D.P.R. 364, 375 (2001).
El propósito de la Ley 80 es dar mayor protección a los trabajadores ante el despido injustificado, al hacer más restrictivo el concepto de justa causa y al establecer una indemnización progresiva que les permita enfrentar temporalmente su situación laboral y económica inesperada, luego del paro laboral. Srio. del Trabajo v. I.T.T., 108 D.P.R. 536, 540-541 (1979).
El Artículo 1 de esta ley dispone que todo empleado de comercio o industria con contrato de trabajo por tiempo indeterminado tiene derecho a recibir de su patrono el sueldo que ha devengado antes de su despido. Además de esta partida, el empleado tiene derecho a recibir una mesada especial, consistente en el salario *678 correspondiente a un mes por concepto de indemnización básica y una indemnización progresiva adicional que equivale a una semana por cada año de servicio. Esta mesada constituye el único remedio al que tiene derecho el empleado así despedido y va dirigida a socorrerlo económicamente en la etapa de transición del empleo que ocupa al que pueda conseguir en un futuro. Delgado Zayas v. Hospital Interamericano, 137 D.P.R. 643, 648-49 (1994); Díaz v. Wyndham Hotel Corp., 155 D.P.R., a la pág. 375.
El Artículo 2 de la misma ley describe algunas situaciones que pueden constituir justa causa para el despido, lo que libera al patrono del pago de la mesada o compensación especial, entre ellas:

“(a) que el obrero siga un patrón de conducta impropia o desordenada;

(b) la actitud del empleado de no rendir su trabajo en forma eficiente o de hacerlo tardía y negligentemente o en violación de las normas de calidad del producto que se produce o maneja por el establecimiento;

(c) violación reiterada por el empleado de las reglas y reglamentos razonables establecidas para el funcionamiento del establecimiento, siempre que copia escrita de los mismos se haya suministrado oportunamente al empleado;

(d) cierre total, temporero o parcial de las operaciones del establecimiento;

(e) los cambios tecnológicos o de reorganización, así como los de estilo, diseño o naturaleza del producto que se produce o maneja por el establecimiento y los cambios en los servicios rendidos al público;

(f) reducciones en empleo que se hacen necesarias debido a reducción en el volumen de producción, ventas o ganancias, anticipadas o que prevalecen al ocurrir el despido. ”

29 L.P.R.A. see. 185 (b)
Ante el reclamo del empleado al amparo de la Ley 80, el patrono puede plantear la defensa de justa causa, a partir de los criterios que ofrece este precepto. El Tribunal Supremo ha señalado, sin embargo, que la Ley 80 no es un código de conducta que fija una lista de faltas definidas o taxativas. Srio del Trabajo v. I.T.T., 108 D.P.R., a la pág. 542. El patrono podría adoptar las normas que entienda razonables y necesarias para que la empresa funcione correctamente. Para privar causadamente de su empleo a una persona, la falta tendría que ser de naturaleza grave o lesiva a la paz y al buen orden de la empresa. Jusino v. Walgreens, 155 D.P.R. 560, 573 (2001). No obstante, la ley indica que “no se considerará despido por justa causa aquél que se hace por mero capricho del patrono o sin razón relacionada con el buen y normal funcionamiento del establecimiento”. 29 L.P. R.A. sec. 185b.
El peso de la prueba para establecer que el despido estuvo justificado lo tiene el patrono. El Artículo 8 de la Ley 80 reseña sobre este particular que:
“(a) En toda acción entablada por un empleado reclamando los beneficios dispuestos por las secs. 185a et seq. de este título, el patrono vendrá obligado a alegar, en su contestación a la demanda, los hechos que dieron origen al despido y probar que el mismo estuvo justificado para quedar eximido de cumplir con lo establecido en la sec. 185a de este título... ”.
29 L.P.R.A. sec,185k.
Es decir, la justa causa será la única defensa afirmativa que relevará al patrono de responder por la mesada que fija la ley. Esto es así porque la ley presume que el despido de un empleado es injustificado hasta que el *679 patrono demuestre que tuvo justa causa para prescindir de sus servicios. Srio del Trabajo v. I.T.T., 108 D.P.R., a la pág. 546. Esto implica procesalmente que, aunque de ordinario es al “reclamante al que le corresponde la obligación de probar con preponderancia de la prueba sus alegaciones para poder prevalecer en el pleito, [tal principio procesal] encuentra una excepción en los casos de la Ley 80”. Díaz v. Wyndham, 155 D.P.R., a la págs. 378-379.
Ahora bien, aunque la mesada es el único remedio económico al que tiene derecho un empleado despedido de manera injusta, si él puede demostrar que, en su caso, se configuran otras causas de acción, además del despido sin causa, tal como una actuación torticera independiente del patrono al poner fin a su empleo, entonces tendrá derecho a aquellos otros remedios que le confieren esas leyes. Así, se ha permitido la acumulación de distintas acciones de naturaleza laboral o torticera que anteceden o surgen del despido injustificado. Véase, por ejemplo, Soc. de Gananciales v. Royal Bank de P.R., 145 D.P.R. 178, 193 (1998); Porto y Siurano v. Bentley P.R., Inc., 132 D.P.R. 331, 342(1992).
Sobre este particular, la Ley 69 de 6 de julio de 1985, 29 L.P.R.A. sec. 1321 et seq., prohíbe el discrimen por género en el área de trabajo. Además, define lo que ha de considerarse represalia en el ambiente laboral y provee para la indemnización al empleado perjudicado por tales actuaciones. El Artículo 20 de esta ley dispone:

“Será práctica ilegal del trabajo que el patrono, organización obrera o comité conjunto obrero-patronal que controle programas de aprendizaje, adiestramiento o readiestramiento, incluyendo programas de adiestramiento en el empleo, despida o discrimine contra cualquier empleado o participante que presente una querella o que se oponga a prácticas discriminatorias o que participe en una investigación o proceso contra el patrono, organización obrera o comité conjunto obrero-patronal por prácticas discriminatorias. ”

29 L.P.R.A. see. 1340.
El Tribunal Supremo en Cintrón v. The Ritz Carlton Hotel, res. el 26 de mayo de 2004, 162 D.P.R. _ (2004), 2004 J.T.S. 88, analiza el historial legislativo de la Ley 69 y determina que su propósito fue prohibir “cualquier tipo de represalias contra las personas que se amparen [en ella]”. Id., 2004 J.T.S. 88, a la pág. 1100. Este caso establece que el fin de la Ley 69 es la justicia social; como la legislación tiene un carácter reparador se debe interpretar de forma liberal, de tal modo que pueda brindar mayor protección a los trabajadores.
Por su parte, el inciso (a) del Artículo 2 de la Ley 115 de 20 de diciembre de 1991, 29 L.P.R.A. sec. 194a(a) establece que:

“(a) Ningún patrono podrá despedir, amenazar, o discriminar contra un empleado con relación a los términos, condiciones, compensación, ubicación, beneficios o privilegios del empleo porque el empleado ofrezca o intente ofrecer, verbalmente o por escrito cualquier testimonio, expresión o información ante un foro legislativo, administrativo o judicial en Puerto Rico, cuando dichas expresiones no sean de carácter difamatorio ni constituyan divulgación de información privilegiada establecida por ley. ”

(Énfasis nuestro.) 29 L.P.R.A. sec. 194a (a).
En Cintrón v. The Ritz Carlton Hotel, ya citado, se estableció que la Ley 69 tiene mayor alcance en la protección que brinda al obrero que la Ley 115. La Ley 69 no hace referencia al foro al que puede acudir un empleado a querellarse, por lo que no importa si la queja se presenta en un foro gubernamental o ante los propios foros patronales. Sí sabemos que con la Ley 69, “[l]a Legislatura simplemente consideró necesario robustecer la política pública de lucha contra [el discrimen por género] proveyendo medidas adicionales a las existentes para ello”. Dorante, et al. v. Wrangler of PR, et al., 145 D.P.R. 408, 424 (1998).
*680 En cambio, la Ley 115 provee una causa de acción al empleado si se le despide o discrimina por haber ofrecido su testimonio ante cualquier foro legislativo, administrativo o judicial sobre cualquier ley o norma laboral. La Ley 115 crea una presunción a favor del trabajador luego que quede establecido que participó en una actividad protegida y que luego fue despedido, amenazado o discriminado en el empleo. Irizarry v. J & J Cons. Prod. Co., Inc., 150 D.P.R. 155, 164, 166 (2000). Véase, además, & Dorante, et al. v. Wrangler of PR, et al., 145 D.P.R., a las págs. 418 y ss., 427 n. 14.
Ello quiere decir que se altera el patrón de la presentación de prueba al amparo de esta legislación. ¿Cómo opera esta alteración en la organización del desfile de prueba ante el foro sentenciador?
El inciso (c) del Art. 2 de la Ley Núm. 115, dispone textualmente lo siguiente:

“(c) El empleado deberá probar la violación mediante evidencia directa o circunstancial. El empleado podrá, además, establecer un caso prima facie de violación a la ley probando que participó en una actividad protegida por las sees. 194 et seq. de este título y que fue subsiguientemente despedido, amenazado o discriminado en su contra de su empleo. Una vez establecido lo anterior, el patrono deberá alegar y fundamentar una razón legítima y no discriminatoria para el despido. De alegar y fundamentar el patrono dicha razón, el empleado deberá demostrar que la razón alegada por el patrono era un mero pretexto para el despido. ”

29 L.P.R.A. sec. 194a(c).
La jurisprudencia sobre el tema ha reiterado que en estos casos basta con que el empleado querellado presente un caso prima facie de discrimen o de represalia, para que el peso de la prueba cambie al patrono querellado. “La Ley crea una presunción juris tantum de violación a la misma a favor del querellante, al disponer que éste establece un caso prima facie una vez prueba que participó en una actividad protegida y que fue subsiguientemente despedido, amenazado o discriminado en su contra en el empleo. Una vez el querellante establece deforma prima facie su caso, el patrono deberá alegar y fundamentar que tuvo una-razón legítima y no discriminatoria para el despido. Ante esto, el empleado, aún puede prevalecer si prueba que la razón alegada por el patrono es un simple pretexto para el despido discriminatorio.” Marín v. Fastening Service System, Inc., 142 D.P.R. 499, 511 (1997), que sigue la doctrina sentada en Rivera v. Insular Wire Products, 140 D.P.R. 912 (1996).
Claro, para iniciar el análisis del caso prima facie, debemos partir del análisis objetivo de las alegaciones de la demanda, con el fin de determinar si son precisas e ilustrativas del patrón de discrimen y de represalia que fundamentan las querellas. Cf. Marín v. Fastening Service System, Inc., 142 D.P.R., a las págs. 512-513.
En cuanto a la indemnización procedente por las violaciones de la Ley 69, el Artículo 21 provee que todo patrono u organización obrera que violente esta pieza de legislación laboral será responsable civilmente y la suma concedida será el “doble del importe de los daños que el acto haya causado al empleado o solicitante de empleo”. 29 L.P.R.A. sec. 1341(a)(1).
La Ley 115, por su parte, también dispone en su Artículo 2(b) que el empleado puede reclamarle al patrono que “le compense por los daños reales sufridos, las angustias mentales, la restitución en el empleo, los salarios dejados de devengar, beneficios y honorarios de abogado. La responsabilidad del patrono con relación a los daños y a los salarios dejados de devengar será el doble de la cuantía que se determine causó la violación a las disposiciones de dichas secciones.” 29 L.P.R.A. sec. 194a(b).
Destacamos en esta reseña normativa que las leyes laborales deben ser interpretadas liberalmente, resolviendo toda duda a favor del obrero, para así cumplir con sus propósitos eminentemente sociales y reparadores. Irizarry v. J & J Cons. Prod. Co., Inc., 150 D.P.R., a la pág. 154.
*681 Ill
Con el propósito de facilitar la exposición de la aplicación del derecho aplicable al caso, discutimos los primeros dos señalamientos de error de manera conjunta.
A
El apelante, Tito Auto Parts, Inc. señala que el foro inferior actuó incorrectamente al invertir el orden de la prueba y concluir que el despido fue sin justa causa. Tras la discusión del derecho aplicable, queda claramente establecido que en controversias bajo el palio de la Ley 80 es al patrono a quien le corresponde demostrar con preponderancia de la prueba que el despido estuvo justificado. Sin embargo, el apelante confunde el orden y la carga de la prueba aplicables al caso de autos con los requeridos para otras acciones laborales. Así surge de la argumentación desarrollada en su alegato sobre cómo se tratan las presunciones en las acciones presentadas al amparo de la Ley 100 de 30 de junio de 1959, 29 L.P.R.A. 148 et seq. Sabido es que, para que se active la presunción de discrimen que regula la Ley 100, le corresponde al demandante desfilar la prueba de la que el juzgador pueda inferir que se le despidió por razones discriminatorias.
En este caso, la apelada presentó tres reclamaciones, una de ellas al amparo de la Ley 80, por la consecuencia mayor que sufrió por los actos del patrono: perdió su empleo luego de presentar una querella por hostigamiento sexual de un compañero ante sus superiores y ante la E.E.O.C. Incluso, al día siguiente en que incoó el pleito de autos por causa del ambiente hostil y el trato discriminatorio que atribuyó a la represalia del patrono, fue despedida. No hay controversia sobre la presentación previa de las querellas y del despido posterior.
Al ventilarse conjuntamente las tres causas de acción ante un mismo juzgador, éste organizó la prueba del modo que creyó conveniente, de conformidad con la facultad inherente y discrecional que tiene para ello, siempre que no afectara los derechos sustantivos de las partes, particularmente el debido proceso de ley. Al iniciarse el proceso y plantearse por la parte apelante el asunto del orden y la carga de la prueba, el juez dictaminó que recibiría primero la prueba del patrono para rebatir la presunción del despido injustificado.
En cuanto a la represalia, también hubo evidencia suficiente para establecer el caso prima facie sobre el hecho específico del despido por represalia. Así, las alegaciones de la parte apelada, junto a las estipulaciones que presentaron ambas partes en su informe conjunto con antelación al juicio, fueron prueba directa y suficiente para establecer presuntamente el hecho en cuestión.
En el caso de autos se estipuló por las partes que la apelada trabajó con la parte apelante entre el 9 de marzo de 2001 hasta el 17 de septiembre de 2002, fecha en que fue despedida. También se estipuló por las partes que ella presentó la querella a la E.E.O.C. el 5 de agosto de 2002. Entre los documentos que se identificaron como exhibits por una y otra parte con antelación al juicio y que luego quedaron sometidos en evidencia, se encontraba la carta que Tito Auto Parts entregó el 4 de junio de 2002 al empleado a quien la apelada señaló como hostigador; así como la carta que ella envió a su patrono para describir la situación hostil en el entorno laboral. En la contestación a la demanda, la parte apelante admitió que despidió a la apelada, aunque por causa justificada. Estos hechos, ya sean admisiones, estipulaciones o prueba documental anunciada por los abogados por su pertinencia y admisibilidad, eran piezas evidenciarías que podían establecer el hecho, prima facie, de que la apelada trabajaba con el patrono apelante, presentó una querella ante el patrono y ante una agencia federal por los mismos hechos y que, a raíz de esos incidentes, fue hostigada laboralmente por sus superiores y despedida como secuela de las denuncias. No tenía el tribunal que sentar a la parte a verter un testimonio que versaría sobre esos mismos hechos.
Ante la concurrencia e identidad de las tres acciones que se ventilarían ese día, el juez dirimió el conflicto y apuntó que el “orden de los factores” no cambiaba el resultado del desfile de prueba, por lo que ambas partes tendrían la oportunidad de presentar y rebatir la prueba presentada por la otra, a los efectos de considerar y aquilatar la evidencia pertinente a las tres causas de acción que atendería a un mismo tiempo. Al comenzar el desfile de prueba con la acción de despido injustificado, el juez requirió al patrono que comenzara con rebatir la *682 presunción establecida por la ley, hecho que estaba avalado por las alegaciones y admisiones hechas por las partes en los procesos anteriores al juicio.
Hemos examinado con mucho detenimiento la prueba documental y la transcripción de la prueba oral. No hemos detectado ningún abuso en la discreción ejercida por el tribunal a quo en la organización, desfile y admisión de la prueba.. No tiene razón el apelante cuando arguye que erró el Tribunal de Primera Instancia al invertir el orden de la prueba.
Por otro lado, el apelante también propone que el despido fue justificado, a tenor de la Ley 80 y su jurisprudencia interpretativa. Sin embargo, el patrono no demostró en juicio de manera preponderante que el despido no estuviera atado a las dos querellas presentadas por la apelada ante el señor Couto y ante la E.E.O.C. o que la querellante exhibiera alguna de las conductas que el Artículo 2 de la referida ley considera como justificantes. Hay que apuntar que en el juicio en su fondo se probó que la señora Batista no obstaculizó las labores de las dos tiendas en las trabajó, por lo que se descarta la alegada negligencia y conducta impropia o desordenada de su parte. La conducta imputada a la señora Batista, que analizamos en otra parte de esta sentencia, no denotó un patrón de comportamientos reprobables y graves que justificaran el trato dispar recibido. La prueba presentada por el patrono fue poco convincente para configurar la conducta grave y lesiva a los intereses de la compañía, criterios que hubieran justificado la terminación del contrato de trabajo.
Además, recordemos que las presunciones de la Ley 80 favorecen al empleado, quien queda eximido de presentar prueba si su patrono no derrota la inferencia que surge del hecho tomado como cierto. No erró el Tribunal de Primera Instancia al organizar el desfile de prueba del modo como surge de la transcripción de la prueba oral y al concluir que la apelada fue objeto de un despido injustificado.
B
De otra parte, el apelante plantea en su tercer señalamiento de error que el foro de primera instancia incidió al concluir que el despido de la apelada fue por represalia. Nuestro ordenamiento jurídico, como anteriormente esbozamos, fomenta y protege que el empleado acuda a una. agencia o a una división interna de la empresa en donde trabaja para quejarse por cualquier situación de discrimen que le afecte como persona y como empleado. Además, puede entablar una causa de acción en contra del patrono si éste incurre en actos o conductas que afecten adversamente su desempeño laboral.
La señora Batista presentó prueba que de modo preponderante demostró que, luego de ella presentar las querellas aludidas, los supervisores y empleados de la empresa apelante crearon un ambiente hostil en el lugar de trabajo que terminó con su despido. Las circunstancias de ser una mujer mensajera en un negocio en que de ordinario predominan los hombres, no representó originalmente ninguna carga o dificultad especial para ella. Durante más de un año, las relaciones de sus compañeros varones y ella fueron cordiales y su labor en la tienda de Caguas muy bien evaluada. No hay duda de que el ambiente laboral que se desarrolló después de querellarse contra uno de ellos por el alegado hostigamiento, alteró el trato diario hacia su persona, el que se convirtió en uno hostil y en ocasiones abusivo y humillante. Esa actitud se reflejó en el traslado no deseado a la tienda de Bayamón y en la documentación de cualquier falla o desacuerdo entre ella y sus superiores. Por ejemplo, entre las conductas negligentes señaladas por el patrono, se destacó el alegado abandono del centro de trabajo, comportamiento que se probó que no sucedió, ya que la apelada no se ausentó de su empleo por más de tres días consecutivos, según se describe tal conducta en el “Manual de Personal”. Además, se le imputó que tenía ausencias no justificadas, hecho refutado por los certificados médicos presentados por la apelada, a pesar de que según el manual de la compañía, no era necesario traer tales certificados si la ausencia era de un día. Y el patrono admitió que recibía su paga íntegra, lo que demostró que sus ausencias nunca le fueron cuestionadas o sancionadas.
A estos sucesos se añade el hecho no controvertido de que fue luego de presentar la querella en la E.E.O.C. que el patrono la suspendió de empleo y sueldo y la obligó a trasladarse a la tienda de Bayamón. El ambiente en *683 el lugar de trabajo se tomó tenso, hostil, difícil para la empleada, a raíz de su reclamo de respeto ante el propio patrono y ante una agencia federal. Antes de estos dos incidentes era una empleada con desempeño excelente, que se ganó la confianza del patrono, y que recibió su permanencia en el puesto y un aumento de sueldo.
Sobre la suficiencia de la prueba en estos casos, el Tribunal Supremo intimó en Hernández v. Espinosa, 145 D.P.R. 248, 275 (1998), que “el lapso de tiempo resulta un dato que podría apoyar la conclusión de que el despido se hizo como represalia por la información suplida con relación a la investigación”. En el caso de autos, la apelada estableció mediante prueba creída por el tribunal sentenciador una relación de causa y efecto entre las querellas y las actuaciones en represalia. En el caso de autos se suscitaron los hechos discriminatorios inmediatamente después de presentarse la querella por hostigamiento ante el patrono y se agravaron luego de incoarse la querella ante la E.E.O.C. El foro a quo podía “lógicamente inferir que uno fue la consecuencia lógica del otro, una represalia por parte del patrono”. Id.
Si aceptamos, para efectos del análisis del tercer error imputado al foro sentenciador, que el 5 de agosto de 2002 el patrono no conocía que la apelada había presentado una querella ante la E.E.O.C., razón por la cual no actuó movido por represalia al suspenderla entre el 7 y el 14 de agosto, lo cierto es que al conocer de la querella la situación de la empleada no mejoró. Una vez la señora Batista fue trasladada a las oficinas de Bayamón para realizar las mismas labores que llevaba a cabo en Caguas, se enfrentó al mismo tratamiento desigual y hostil. El patrono intensificó las amonestaciones en un término de sólo 40 días antes del despido, a pesar de que el gerente de la tienda admitió que la apelada no afectó el funcionamiento de la tienda y que cumplía con las entregas requeridas. (T.P.O. de 4 de octubre de 2004, pág. 57.)
Por otro lado, en abierta persecución y acoso contra la apelada, el patrono documentó múltiples faltas que no tenían justificación; no aplicó el “Manual de Personal” ni el “Manual del Delivery” uniformemente entre las tiendas ni entre los empleados en el mismo local, lo que permitió concluir al tribunal a quo que la aplicación y el monitoreo discriminatorio iba dirigido solamente contra la señora Batista. Incluso, por la prueba presentada, se podía concluir que el patrono escudriñaba al detalle el comportamiento de la apelada para aplicarle solamente a ella las normas de los manuales de empleados y disciplinarla. Y ello como consecuencia de sus denuncias ante el mismo patrono y ante la E.E.O.C.
No erró el foro de primera instancia al aquilatar la prueba y concluir que la empleada apelada probó sus causas de acción por represalias al amparo de la Ley 69 y la Ley 115, ya citadas. No incurrió en el tercer señalamiento de error.
C
El apelante también arguye que el Tribunal de Primera Instancia incidió al valorar los sufrimientos y angustias mentales en $20,000, cifra que elevó a $40,000 al aplicar la penalidad legislada. Sostienen que la fijación de esa cuantía fue arbitraria.
Según la transcripción de la prueba oral, la señora Batista declaró que después del despido se sentía muy triste y deprimida, ya que tenía niños bajo su cuido y no tenía dinero para cumplir con sus compromisos económicos, lo que le causaba, además, mucha ansiedad. En términos profesionales se sintió desilusionada, ya que expresó que tenía la mejor disposición de aprender sobre los distintos aspectos del negocio de piezas de vehículos y de, incluso, instruirse para poder vender piezas algún día. (T.P.O. de 4 de octubre de 2004, págs. 81-83.) Luego de tres meses de estar desempleada, la señora Batista consiguió un trabajo que no pudo mantener por una condición física. Para la fecha del juicio en su fondo, estaba empleada desde hacía dos años con el mismo patrono.
Recordemos que en nuestra jurisdicción existe la doctrina de la abstención judicial en cuestiones de la valoración de sumas como las que se impugnan. Ya ha pautado el Tribunal Supremo que “en relación con esta difícil y angustiosa labor de estimación de daños, los tribunales de instancia, de ordinario, están en una mejor *684 posición que los tribunales apelativos para evaluar la situación por cuanto son los que tienen contacto directo con la prueba que a esos efectos presenta la parte que los reclama”. Rodríguez Cancel v. A.E.E. 116 D.P.R. 443, 451 (1985).
Por esa razón, la función de determinar y estimar el valor de la indemnización por daños “descansa sobre el ejercicio discrecional prudente, juicioso y razonable del juzgador de hechos animado por un sentido de justicia y conciencia humana”. Urrutia v. A.A.A. 103 D.P.R. 643, 647 (1975). Los foros apelativos no hemos de intervenir con la evaluación del tribunal inferior “a menos que las cuantías concedidas sean ridiculamente bajas o exageradamente altas”. Rodríguez Cancel v. A.E.E. 116 D.P.R., a la pág. 451.
Se ha establecido que quien solicita la modificación de las cuantías concedidas por el foro sentenciador tiene la obligación de demostrar que existen circunstancias que justifican la alteración por el foro apelativo. Urrutia v. A.A.A. 103 D.P.R, a la pág. 647.
El apelante señala como única razón de inadecuación de la cuantía fijada que la pérdida económica y el daño emocional sufrido por la apelada se debió a su propia gestión. Señaló que consiguió un empleo luego de ser despedida y que renunció a él. Más tarde logró emplearse nuevamente en un trabajo estable en el que permanecía hasta el día de la vista. La parte apelante concentra su análisis económico en que la señora Batista no sufrió la pérdida de ingreso considerable, pues se empleó casi inmediatamente. Enfatiza que ella no presentó abundante prueba médica para demostrar su estado anímico: “no fue al médico, no recibió tratamiento, no tomó medicamentos, no proveyó copia de su expediente médico ni prueba pericial de daños emocionales”. (Apelación, pág. 26.) Olvida la parte apelante que la indemnización se dio por los sufrimientos y las angustias sufridas por la apelada mientras era su empleada. Esta partida realmente compensa las humillaciones sufridas por la apelada por el trato recibido del presidente de la empresa y de los dos supervisores en las dos tiendas en las que laboró; por la angustia de saberse día a día vigilada para hallarle fallas en su desempeño que justificaran el despido; por el agravamiento de sus condiciones de trabajo al trasladarla a otra tienda contra su voluntad; por el ambiente hostil que debió soportar por atreverse a denunciar el hostigamiento de un compañero varón y tratar de ponerle fin a ese comportamiento en el lugar de trabajo, aunque antes de querellarse era una empleada eficiente con un récord impecable; por sentirse rechazada por sus superiores y compañeros de trabajo por hacer valer sus derechos laborales.
Siendo así, la parte apelante no nos ha persuadido de que existen circunstancias que justifican la modificación de la cuantía impuesta como indemnización por tales sufrimientos y angustias. Nos abstenemos de intervenir con el criterio del foro sentenciador al fijar la indemnización en la cuantía aludida. Tampoco incidió el tribunal apelado en cuanto al cuarto señalamiento de error.
IV
Por los fundamentos expresados, confirmamos la resolución recurrida.
Así lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.
Milldred Ivonne Rodríguez Rivera
Secretaria Interina del Tribunal de Apelaciones
ESCOLIOS 2007 DTA 8
1. El incidente consistió en que la señora Batista llamó al señor Narváez para comunicarle que llegaría más tarde ese día porque tenía un compromiso en la escuela de su hijo. Ese día llegó a la tienda a las 11:45 a.m. Quiso reducir su hora de almuerzo y comenzar a trabajar en la mañana, pero luego de un intercambio de palabras con su supervisor y de una conversación telefónica con el señor Couto, éste no se lo permitió y le pidió que se retirara de la tienda por el día. (T.P.O. de 4 de octubre de 2004, págs. 28, 119-122.)
*685 2. El documento alegadamente estipulaba que era necesario dar cuenta de la hora en que salía de la tienda a hacer las entregas y el nombre y la firma de la persona que la atendía en el establecimiento a donde fue a hacer la gestión. (T.P.O. de 4 de octubre de 2004, págs. 49-50.)
3. La apelada declaró que, en una ocasión, sobre el piso que ella había limpiado, aún mojado, el señor Cedeño le tiró y derramó el contenido del bote de basura que debía sacar afuera, porque ella le señaló que lo sacaría luego de que el piso se secara, para no ensuciarlo nuevamente. (T.P.O. de 4 de octubre de 2004, pág. 57; T.P.O. 11 de octubre de 2004, pág. 66.)