Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL V

| | | |
|---|---|---|
| KEVIN LEDER<br>**Apelado**<br><br>V.<br><br><br>AGUSTÍN RULLÁN TORO<br>**Apelante** | KLAN202401036 | *APELACIÓN* procedente del Tribunal de Primera Instancia, Sala Superior de Mayagüez<br><br>Civil. Núm. MZ2023VB02221<br><br>Sobre:<br>Despido Constructivo |

Panel integrado por su presidente, el Juez Hernández Sánchez, el Juez Bonilla Ortiz y la Jueza Mateu Meléndez.

**Hernández Sánchez, Juez Ponente**

### SENTENCIA

En San Juan, Puerto Rico, a 17 de enero de 2025.

El 20 de noviembre de 2024, el Dr. Nevin Leder (doctor Leder o apelante) compareció ante nos mediante un recurso de *Apelación* y solicitó la revisión de una *Sentencia* que se dictó el 11 de octubre de 2024 y se notificó el 16 de octubre de 2024 por el Tribunal de Primera Instancia, Sala Superior de Mayagüez (TPI). Mediante el aludido dictamen, el TPI desestimó la causa de acción de la parte apelante al amparo de la Regla 10.2 (5) de Procedimiento Civil, 32 LPRA Ap. V, R. 10.2 ya que determinó que no existía una reclamación que justificara la concesión de un remedio.

Por los fundamentos que expondremos a continuación, ***confirmamos*** el dictamen recurrido.

I.

El 19 de diciembre de 2023, el doctor Leder presentó una *Demanda* en contra del Dr. Agustín Rullán Toro (doctor Rullán), el Dr. Luis A. Ferrao Delgado (doctor Ferrao), la Dra. Rosa Román (doctora Román o directora)[1], el Dr. Fernando Gilbes (doctor Gilbes),

---

[1] Al momento de los hechos, ejercía el cargo de directora del Departamento de Ingles donde laboraba el doctor Leder.

el Recinto Universitario de Mayagüez de la Universidad de Puerto Rico (RUM) y la Universidad de Puerto Rico (UPR) (en conjunto, la parte apelada) sobre despido constructivo, despido constructivo discriminatorio, inconstitucionalidad de la Certificación 60, 2022-2023 de la UPR, violación al debido proceso de ley y, por último, daños.[2] En esta, alegó que la doctora Román mediante un formulario titulado *Advertencia Verbal* y en una reunión formal de Zoom, lo acusó falsamente de violar las normas universitarias y de participar en conducta impropia y desordenada. Explicó que, la directora afirmó en dicho formulario que el apelante escribió un comentario inapropiado en el examen de una estudiante. Además, que lo acusó de haber golpeado el escritorio de la estudiante cuando devolvió referido examen, lo cual desató la ideación suicida de la universitaria.[3] No obstante, el doctor Leder negó haber realizado dicha conducta y expresó que trató a la estudiante con respeto, tal como lo hace con todos los estudiantes.[4]

Por otra parte, alegó que las acusaciones en su contra se difundieron verbalmente y por escrito a otros administradores, y que tanto la doctora Román como el doctor Gilbes se habían negado investigar formalmente los cargos contra el apelante, a pesar de éste haberlo solicitado repetidamente. Del mismo modo, argumentó que el formulario violentó su debido proceso legal, en vista de que lo condenó antes de que tuviera la oportunidad de presentar su defensa. Al igual, indicó que tampoco se le permitió ver la queja presentada por la estudiante en contra de él. Expresó que, aunque se le permitía responder a la *Advertencia Verbal*, la condena aún

---

[2] Véase, págs. 1-32 del apéndice del recurso. La acción se dirige en contra de todos los codemandados en su carácter personal y oficial.

[3] Según las alegaciones de la *Demanda*, la doctora Román informó al doctor Leder que la estudiante estaba en "Suicide Watch" antes de asistir a la clase del apelante.

[4] Es preciso señalar que en su alegación 113 de la *Demanda*, el doctor Leder indicó que si escribió en el examen de la universitaria. ¡No obstante, alegó que el comentario escrito fue "No! Did you study the theory outline?" en vez de "Did you even study?".

permanecería en su expediente sin ninguna investigación de los hechos. A tales efectos, aseveró que el RUM participó en un "plan tortuoso y complejo" ejecutado por la doctora Román para hostigarlo, amenazarlo e intimidarlo con cargos falsos hasta el punto de que se vio obligado a retirarse.

En respuesta, el 22 de marzo de 2024, la parte apelada[5] presentó su *Moción solicitando Desestimación.*[6] Mediante esta, alegó que a tenor con la Ley Núm. 1 de 20 de enero de 1966, según enmendada, conocida como *Ley de la Universidad de Puerto Rico*, 18 LPRA sec. 601 *et seq.* (Ley Universitaria), la UPR es quien ostentaba capacidad jurídica para demandar y ser demandado, y que referido estatuto no le confirió dicha facultad al RUM, por lo cual, procedía desestimar la acción contra esta entidad. A su vez, argumentó que procedía desestimar la reclamación en contra del doctor Rullán y el doctor Ferrao, toda vez que la *Demanda* no contenía alegaciones suficientes para sostener un reclamo en contra de ellos. Explicó que, de la reclamación no surgía con claridad cuales acciones se les imputaba a los aludidos doctores y que solo fueron mencionados por nombre en las alegaciones de la *Demanda* para los únicos fines de indicar la posición oficial que ocupaban.

En cuanto a las imputaciones hechas en contra de la doctora Román y el doctor Gilbes, la parte apelada alegó que las mismas carecían de mérito. En primer lugar, sostuvo que, la alegada difamación nunca ocurrió, en vista de que el apelante admitió en su *Demanda* que era posible que él hubiera escrito la pregunta en el examen de la estudiante. Además, indicó que, respecto al golpe sobre el escritorio, el doctor Leder nunca alegó que dicha información hubiese sido publicada de forma negligente o de haber

---

[5] La parte apelada indicó que, excluyendo la UPR, la cual fue emplazada, los otros codemandados no emplazados comparecieron sin someterse a la jurisdicción del TPI para los únicos fines de presentar dicho escrito dispositivo.
[6] Id., págs. 62-86.

sido falsa, se hubiese divulgado a una tercera persona. En este sentido, la parte apelada argumentó que las comunicaciones intracorporativas eran privilegiadas y no constituían una publicación a terceros cuando eran transmitidas a personas con necesidad de conocer su contenido. Ante ello, alegó que no se configuraron los elementos para una causa de acción por difamación. A su vez, expresó que, conforme al Reglamento Disciplinario y la Certificación 60 (2022-2023) de la Junta de Gobierno de la UPR (Certificación 60), una advertencia sea verbal o escrita no se consideraría una acción disciplinaria, ni tampoco formaría parte del expediente del personal. Por tanto, indicó que la advertencia verbal no tenía el alcance que el doctor Leder pretendía.

Por otra parte, alegó que la parte apelante no presentó alegación alguna que satisficiera los elementos de acoso laboral. Asimismo, expresó que, el doctor Leder solo presentó alegaciones conclusorias, toda vez que no indicó en detalle en qué consistía las alegadas acciones de acoso, los actores de estas, ni cuándo o donde ocurrieron para sostener su reclamo de "un patrón de maltrato, que se remonta a muchos años atrás". Por otro lado, en cuanto a la causa de acción por represalias, arguyó que, la parte apelante tampoco especificó en qué consistía las alegadas represalias y se limitó a especulaciones y aseveraciones conclusorias.

En relación con el alegado despido constructivo, la parte apelada sostuvo que, las alegaciones del doctor Leder no configuraron los elementos de la referida acción. Explicó, que dicha reclamación requería actuaciones intencionales del patrono a una magnitud que hacía intolerable al empleado permanecer en su empleo. Además, añadió que, no era cualquier molestia, sino acciones patronales que haría una persona razonable renunciar, por lo cual se utiliza un criterio objetivo. En este sentido, indicó que aun tomando por ciertas las aseveraciones del doctor Leder estas no

constituían un despido constructivo. Señaló que, en cuanto a la *Advertencia Verbal* y su contenido, el apelante admitía en sus alegaciones que había escrito en el examen de la estudiante. A su vez, puntualizó que el doctor Leder no alegó en su *Demanda* que fuera objeto de condiciones de trabajo más onerosas, o de reducciones salariales, o de haber sido rebajado de categoría en su puesto. Ante ello, arguyó que, los alegados incidentes por el apelante, ni de forma individual o agregado forzaría a una persona razonable a renunciar.

Del mismo modo, alegó que el doctor Leder tenía a su disposición los procedimientos apelativos universitarios y no los utilizó. Sostuvo que, mediante dicho procedimiento, el apelante podía haber presentado todos sus reclamos hasta incluso el de la apropiación de los tres bolígrafos de pizarra. A estos efectos, argumentó que el doctor Leder tenía recursos administrativos disponibles que no agotó, por lo cual, no era correcta la alegación que el apelante se vio forzado a renunciar por no tener otro remedio a su disposición.

Por último, sobre la alegada inconstitucionalidad de la Certificación 60 y el reclamo constitucional del doctor Leder, la parte apelada arguyó que las mismas se debían desestimar por ser vagas y carecer de mérito. En este sentido, alegó que el doctor Leder no detalló por qué la Certificación 60 era inconstitucional, sin embargo, se remitía a sus disposiciones cuando lo estimaba conveniente. A su vez, señaló que, la *Advertencia Verbal* no constituía una acción disciplinaria, ni formaba parte del expediente del empleado. Por lo cual, argumentó que al no estar afectado un interés del doctor Leder, no se activó lo dispuesto en el Reglamento General de la UPR en cuanto a las garantías mínimas del debido proceso de ley, ni la protección consagrada en la Constitución.

El 23 de abril de 2024, el apelante presentó su *Moción en Oposición a Moción Desestimación*.[7] En esencia, reiteró las alegaciones de su *Demanda* y argumentó que éstas eran suficiente para sustentar las distintas causas de acción que se reclamaban, por tanto, la moción de desestimación era improcedente en derecho.[8]

Evaluados los escritos, el 11 de octubre de 2024, el TPI dictó *Sentencia* que fue notificada el 16 de octubre de 2024.[9] En primer lugar, concluyó que no existía causa de acción en contra del RUM, toda vez que la Ley Universitaria le concedió facultad para demandar y ser demandada a la UPR, y no a sus unidades institucionales. A su vez, determinó que, en cuanto al doctor Rullán y el doctor Ferrao, las alegaciones no establecían con claridad qué acciones u omisiones llevaron a cabo estos individuos en contra de los intereses del doctor Leder. En consecuencia, el TPI desestimó la *Demanda* en contra de los aludidos doctores, en vista de que no existía una reclamación que justificara la concesión de un remedio.

Ahora bien, respecto a la doctora Román y el doctor Gilbes, el TPI concluyó que no se configuraron los elementos de las causas de acciones que se les imputaron. Indicó que las alegaciones del apelante desvirtuaron la naturaleza de las acciones llevadas a cabo por la doctora Román y como resultado lo condujo a un análisis equivocado de la situación. Puntualizó que el deber de la doctora Román, como directora del Departamento de Inglés, era velar por el buen funcionamiento del Departamento. Ante ello, indicó que, al recibir una queja de una estudiante sobre una alegada conducta del apelante y llevar a cabo una reunión para discutir la situación, lo

---

[7] Id., págs. 87-149.
[8] Cabe señalar que, junto con su escrito, el doctor Leder presentó prueba documental que consistía en: la Advertencia Verbal, una copia de las preguntas de la prueba corta, una copia de la contestación de la estudiante a la prueba corta, la guía de estudio de la prueba y una carta enviada al doctor Gilbes por parte del doctor Leder.
[9] Id., págs. 159-182.

hacía dentro de sus funciones como directora. Por tanto, determinó que dicha conducta no configuró un patrón de maltrato u hostigamiento laboral. Además, puntualizó que las alegaciones realizadas por el doctor Leder para imputar un patrón de maltrato u hostigamiento laboral a la parte apelada se reducían mayormente a diferencias de criterios entre profesionales.

En cuanto a la causa de acción sobre difamación en contra del doctor Gilbes y la doctora Román, el TPI expresó lo siguiente:

> De la propia demanda surge que, en efecto, el Profesor Leder escribió un comentario en el examen de la estudiante. Ese es un hecho cierto. Además, no hay alegación que exprese con certeza cuando y como se hizo la publicación que alegadamente le causó daños a su reputación. Tampoco se establece que se haya realizado la comunicación a una tercera persona ajena al entorno donde necesariamente habría de discutirse la situación. La difamación requiere una publicación. Y a su vez, dicha publicación debe causar daños reales los cuales deben ser alegados correctamente.
>
> Por otra parte, no podemos dejar de resaltar que lo que alega el Dr. Leder, se trata de unas expresiones difamatorias, tratan de información que parten de la verdad. Toda vez que, de la propia demanda, surge que, en efecto, realizó un comentario escrito en el examen de la estudiante. Las expresiones difamatorias parten de la falsedad. La verdad no crea una acción de difamación. Por ende, entendemos que de la demanda incoada no surge una causa de acción por difamación que justifique la concesión de un remedio.
>
> Lo mismo ocurre en cuanto a la alegada difamación en cuanto al alegado golpe propiciado por Leader al escritorio de la estudiante al devolverle "el cuestionario". Alego el Dr. Leder que "el director acusó a la demandante de golpear el escritorio de L. Martínez, cuando le devolvió el cuestionario." Las alegaciones en cuanto a una causa de acción por difamación son insuficientes para que esta se configure. En la reunión sostenida por Leder y la Dra. Román, se encontraba presente su asistente. Al haber una tercera persona presente, alega Leder que se configura la acción por difamación, toda vez que se dio una publicación. No le asiste la razón. Recuérdese que las comunicaciones que se dan dentro de una entidad corporativa son información privilegiada y no constituyen una publicación a terceros siempre y cuando las personas dentro de la empresa que advienen en conocimiento de la información contenida en la comunicación son personas con necesidad de conocerla. Véase, Porto y Siruano v. Bentley P.R., Inc., 132 DPR 331 (1992).

Es decir, el TPI determinó que las alegaciones en la *Demanda* eran insuficientes para sostener un reclamo sobre difamación, en vista de que el doctor Leder no alegaba con certeza cuándo y cómo se hizo la publicación que le causó daños, ni tampoco estableció que se haya difundido la comunicación a un tercero.

Sobre la violación al debido proceso de ley, el TPI concluyó que la misma era improcedente. Expresó, que la protección al debido proceso de ley se activaba cuando estaba en juego los intereses y derechos adquiridos de quien alegaba que se le había violentado. A tales efectos, indicó que no existía trámite administrativo formal dirigido a disciplinar al doctor Leder, ni una querella notificada en su contra. Asimismo, puntualizó que, el apelante no alegó afirmativamente que la advertencia formó parte de su expediente personal. Por tanto, determinó que la reclamación no justificaba la concesión de un remedio.

En cuanto a la causa de acción sobre represalias, el TPI determinó que tampoco encontró alegaciones que justificaran la concesión de un remedio. Indicó que el apelante no alegó haber incurrido en una actividad o conducta protegida por ley, ni aseveró haber sido objeto de un despido, de amenazas o de una acción disciplinaria. En cambio, puntualizó que, las alegaciones del doctor Leder se basaron en sus percepciones y especulaciones sobre su futuro utilizando como base la situación ocurrida con la estudiante. Por tanto, determinó que las alegaciones no cumplieron con el estándar requerido para establecer un caso de represalias.

En lo que concierne la causa de acción sobre acoso laboral, el TPI indicó lo siguiente:

> No hemos encontrado alegaciones que contengan de su faz **conducta malintencionada, no deseada, repetitiva y abusiva; arbitraria, irrazonable y/o caprichosa; verbal, escrita y/o física; de forma reiterada por parte del patrono, sus agentes, supervisores o empleados, ajena a los legítimos intereses de la empresa del patrono**, no deseada por

el demandante y que atente contra sus derechos constitucionales protegidos. Mas allá de percepciones y conclusiones del demandante, no existen alegaciones sobre hechos que constituyan conductas repetitivas y malintencionadas por parte del patrono dirigidas a atentar contra los derechos del demandante. Si bien es cierto que, el demandante, menciona haber sido víctima de un plan "tortuoso y complejo" para hostigarlo y amenazarlo, con cargos falsos, con el propósito de confundirlo humillarlo e intimidarlo, no se alegan los hechos específicos que configuran esa conducta la cual debe ser repetitiva y malintencionada por parte del patrono. Sus alegaciones están plagadas de creencias y suposiciones sustentadas solo en su percepción.

A tales efectos, resolvió que las alegaciones de la *Demanda* no eran suficientes para establecer de su faz una causa de acción por acoso laboral.

Por último, en cuanto a la causa de acción por despido constructivo, el TPI concluyó que las alegaciones sobre dicha reclamación carecían de mérito. Indicó que, las alegaciones no contenían hecho alguno que estableciera que la parte apelada realizó acciones en contra del doctor Leder para inducirlo o forzarlo a renunciar, tales como imponer condiciones de trabajo más onerosas, reducir su salario, rebajarlo de categoría o someterlo a vejámenes o humillaciones de hecho o de palabra de magnitud sustancial. Del mismo modo, señaló que, en el despido constructivo la intensidad y el alcance de la conducta patronal se examinaba desde una óptica objetiva y no desde la perspectiva del doctor Leder.

Por consiguiente, el TPI determinó que, aun analizando las alegaciones de la *Demanda* de la forma más liberal a la parte apelante, ésta no exponía reclamaciones que justificaran la concesión de un remedio. Por lo cual, declaró HA LUGAR la *Moción de Desestimación* presentada por la parte apelada y, en consecuencia, desestimó la *Demanda* en su contra.

En desacuerdo, el 31 de octubre de 2024, el doctor Leder presentó su *Moción de Reconsideración*,[10] la cual fue declarada NO

---

[10] Id., págs. 183-217.

HA LUGAR el 1 de noviembre de 2024.[11] Aún inconforme, el 20 de noviembre de 2024, el doctor Leder presentó el recurso de epígrafe y formuló el siguiente señalamiento de error:

> **El TPI cometió un grave error manifiesto de derecho y abusó de su discreción al emitir una Sentencia contraria a derecho y abusó de su discreción judicial al imponer un nuevo estándar a favor de la desestimación al requerir que un demandante pruebe la totalidad de sus alegaciones en la demanda, sin haber escuchado testigos ni haber evaluado documentos y demanda contiene suficientes alegaciones que configuran las causas de acción invocadas y no se justifica que la misma sea desestimada solamente porque el TPI se niegue a aceptar la forma específica en que fueron redactadas las alegaciones de la demanda, aunque con otras palabras las alegaciones de la demanda expresen lo mismo.**

Atendido el recurso, el 2 de diciembre de 2024, emitimos una *Resolución* concediéndole a la parte apelada hasta el 20 de diciembre de 2024 para presentar su alegato en oposición. En cumplimiento con nuestra orden, la parte apelada presentó su *Alegato en Oposición* y negó que el TPI cometiera el error que el doctor Leder le imputó. Con el beneficio de la comparecencia de ambas partes procedemos a resolver el asunto ante nos. *Veamos.*

II.

**-A-**

Para propósitos de la Ley Núm. 80 de 30 de mayo de 1976, según enmendada, mejor conocida como *Ley de Indemnización por Despido sin Justa Causa,* 29 LPRA sec. 185a *et seq.* (Ley Núm. 80) la definición de despido no se limita a la acción unilateral del patrono de cesantear al empleado, sino que la misma es abarcadora e incluye las acciones de este dirigidas a inducir o forzar al empleado a renunciar. *Rivera Figueroa v. The Fuller Brush. Co.*, 180 DPR 894, 907 (2011). Esto último se conoce como despido constructivo o tácito. Particularmente, ello se define como "la renuncia del

---

[11] Id., pág. 218.

empleado motivada por actuaciones del patrono dirigidas a inducirlo o forzarlo a renunciar tales como imponerle o intentar imponerle condiciones de trabajo más onerosas, reducirle el salario, rebajarlo en categoría o someterlo a vejámenes o humillaciones de hecho o de palabra". Íd. **Empero, para poder establecer una reclamación por despido constructivo no basta con "cualquier molestia o condición antipática en el empleo y, cuando se trate de vejámenes y humillaciones, éstos deben ser de magnitud sustancial".** (Énfasis suplido) *León Torres v. Rivera Lebrón*, 204 DPR 20, 39 (2020). A tales efectos, **el ambiente en el trabajo debe "tornarse intolerable a tal nivel que la única alternativa razonable para el empleado afectado sea dimitir".** (Énfasis suplido) Íd. En otras palabras, existe un despido constructivo cuando un empleado se ve forzado a presentar su renuncia debido a las condiciones de trabajo onerosas impuestas por el patrono. Íd., pág. 908.

En estos casos, a diferencia de la presunción de despido injustificado, es el empleado el que está obligado a probar que la única alternativa razonable que le quedaba era el abandono de su cargo para que los actos del patrono constituyan despido constructivo. *Arthur Young & Co. v. Vega III*, 136 DPR 157, 183 (1994). **Por lo tanto, no basta con una mera alegación de que la renuncia fue un despido constructivo.** (Énfasis suplido) *Rivera Figueroa v. The Fuller Brush. Co.*, supra, pág. 909. Además, cabe precisar que, no se determina la magnitud y el efecto de los actos del patrono con referencia a la visión subjetiva del empleado en particular, sino que se utiliza un criterio objetivo al examinar si una persona razonable se sentiría forzada a renunciar como resultado de las acciones del patrono. Íd., pág. 908.

A modo de resumen, esta doctrina requiere: (1) uno o más actos voluntarios por parte del patrono; (2) que [e]stos estén

motivados por una razón ajena al legítimo interés de salvaguardar el efectivo desempeño de la empresa o por una motivación que pueda calificarse como caprichosa, arbitraria e irrazonable; y, (3) que se cree una condición onerosa para el empleado que fuerce inevitablemente la renuncia a su puesto. *Figueroa Rivera v. El Telar, Inc.*, 178 DPR 701, 711 (2010).

**-B-**

La Sección 8 del Artículo II de la Constitución del Estado Libre Asociado establece que "[t]oda persona tiene derecho a la protección de ley contra ataques abusivos a su honra, a su reputación y a su vida privada o familiar". Art. II, Sec. 9, Const. PR, LPRA, Tomo 1. En Puerto Rico, esta es la fuente legal primaria que protege a un ciudadano contra la injuria. *Pérez v. El Vocero de P.R.*, 149 DPR 427 (1999). El ejercicio del derecho que garantiza esta disposición constitucional generalmente se manifiesta a través de la acción por difamación o libelo. *Porto y Siurano v. Bentley P.R. Inc.*, 132 DPR 331, 343 (1992).

La difamación se ha definido como la acción de "desacreditar a una persona" por medio de la publicación de "cosas contra su reputación". *Pérez v. El Vocero de P.R.*, supra, pág. 441. Este tipo de acción tiene el propósito de brindarle a la persona perjudicada un remedio civil por los daños ocasionados por los ataques a su reputación. *Colón, Ramírez v. Televicentro de P.R.*, 175 DPR 690, 712 (2009). Esta protección contra expresiones difamatorias tiene su origen en la Ley de 19 de febrero de 1902, la cual estableció una acción por libelo y calumnia. 32 LPRA sec. 3141, *et seq.* No obstante, el Tribunal Supremo de Puerto Rico aclaró que, el Artículo 1802 del Código Civil de 1930[12] (derogado) "es la fuente de protección civil

---

[12] Es preciso señalar que, aunque el citado código se encuentra derogado, la norma establecida respecto a una acción por difamación no fue alterada por la aprobación del Código Civil de Puerto Rico de 2020.

contra ataques difamatorios en nuestra jurisdicción". 31 LPRA sec. 5141; *Colón, Ramírez v. Televicentro de P.R.*, supra.

Dicho esto, los elementos de la causa de acción de daños y perjuicios por difamación dependerán de si el demandante es una persona privada o una figura pública. Cuando se trata de una persona privada, es necesario que la persona difamada alegue y pruebe esencialmente tres requisitos para que prospere su acción de daños y perjuicios: (1) que la información es difamatoria y falsa; (2) que la publicación se hizo de forma negligente, y (3) que sufrió daños reales por tales manifestaciones. *Pérez v. El Vocero de P.R.*, supra, pág. 442.

La negligencia o el grado de culpa requerido para imputar responsabilidad por difamación se ha definido como "la falta de debido cuidado, que a su vez consiste en no anticipar y prever las consecuencias racionales de un acto, o de la omisión de un acto, que una persona prudente habría de prever en las mismas circunstancias". *Colón, Ramírez v. Televicentro de P.R.*, supra, págs. 706-707. Los criterios para determinar si la parte demandada incurrió en esa conducta negligente son: (1) la naturaleza de la información publicada y la importancia del asunto sobre el cual trata, especialmente si la información es libelosa de su faz y si puede preverse el riesgo de un daño; (2) el origen de la información y la confiabilidad de su fuente; (3) la razonabilidad del cotejo de la veracidad de la información obtenida, cuya determinación se lleva a cabo tomando en consideración el costo en términos de dinero, el personal involucrado, la urgencia de la publicación, el carácter de la noticia y cualquier otro factor pertinente. Íd., pág. 707. No obstante, debe tenerse presente la importancia de identificar si "el demandado podría prever que su acción u omisión podría causar algún daño". Íd.

**-C-**

El Art. 2 de la Ley Núm. 115 de 20 de diciembre de 1991, según enmendada, conocida como *Ley contra el Despido Injusto o Represalias a todo Empleado por Ofrecer Testimonio ante un Foro Legislativo, Administrativo o Judicial* (Ley Núm. 115), 29 LPRA sec. 194a, establece que:

> (a) Ningún patrono podrá despedir, amenazar o discriminar contra un "empleado con relación a los términos, condiciones, compensación, ubicación, beneficios o privilegios del empleo porque el empleado ofrezca o intente ofrecer, verbalmente o por escrito, cualquier testimonio, expresión o información ante un foro legislativo, administrativo o judicial en Puerto Rico, así como el testimonio, expresión o información que ofrezca o intente ofrecer, en los procedimientos internos establecidos de la empresa, o ante cualquier empleado o representante en una posición de autoridad, cuando dichas expresiones no sean de carácter difamatorio ni constituyan divulgación de información privilegiada establecida por ley.
>
> (b) Cualquier persona que alegue una violación a esta Ley podrá instar una acción civil en contra del patrono dentro de tres (3) años de la fecha en que ocurrió dicha violación y solicitar se le compense por los daños reales sufridos, las angustias mentales, la restitución en el empleo, los salarios dejados de devengar, beneficios y honorarios de abogado. La responsabilidad del patrono con relación a los daños y a los salarios dejados de devengar, será el doble de la cuantía que se determine causó la violación a las disposiciones de esta Ley.
>
> (c) El empleado deberá probar la violación mediante evidencia directa o circunstancial. El empleado podrá además establecer un caso prima facie de violación a la ley probando que participó en una actividad protegida por esta Ley y que fue subsiguientemente despedido, amenazado o discriminado en su contra de su empleo. Una vez establecido lo anterior, el patrono deberá alegar y fundamentar una razón legítima y no discriminatoria para el despido. De alegar y fundamentar el patrono dicha razón, el empleado deberá demostrar que la razón alegada por el patrono era un mero pretexto para el despido. (Énfasis nuestro).

La Ley Núm. 115, *supra,* brinda protección a empleados frente a represalias que pueda tomar un patrono contra estos por proveer testimonio, expresión o información, ya sea verbal o escrita, ante un foro judicial, legislativo o administrativo. *S.L.G. Rivera Carrasquillo v. A.A.A.,* 177 DPR 345, 361 (2009); *Ocasio v. Kelly Servs.,* 163 DPR

653, 684 (2005). Así, el propósito del estatuto es proteger a los empleados de cualquier discrimen por medio de represalias por participar en una actividad protegida. Íd., pág. 684.

Un obrero tiene dos (2) maneras de establecer un caso de represalias, esto es: (a) probar la violación mediante evidencia directa o circunstancial; o (b) establecer la presunción *juris tantum* de la Ley Núm. 115, *supra. S.L.G. Rivera Carrasquillo v. A.A.A., supra,* pág. 362. Así, una vez el obrero presenta un caso *prima facie*, se crea una presunción de que el despido fue en represalias. Íd., pág. 361. Un empleado establece un caso *prima facie* cuando prueba que: (1) participó en una actividad protegida por la ley; y (2) subsiguientemente fue despedido, amenazado o discriminado en su empleo. Íd., pág. 362. Establecido lo anterior, le corresponde al patrono rebatir la presunción fundamentando el despido legítimamente. Íd. En caso de que el patrono cumpla con el segundo paso, el empleado debe demostrar que la razón alegada por el patrono es un mero pretexto para la acción adversa. Íd.

**-D-**

La Ley Núm. 90-2020, según enmendada, conocida como *Ley para Prohibir y Prevenir el Acoso Laboral en Puerto Rico*, 29 LPRA sec. 3111, *et seq.* (Ley Núm. 90), estableció una política pública "contra todo tipo de acoso laboral que afecte el desempeño del trabajador, altere la paz industrial y atente contra la dignidad de los trabajadores, no importa cuál sea su categoría o clasificación de empleo". 29 LPRA sec. 3112. En lo pertinente, dicha ley dispone que aplicara a cualquier patrono sea "persona natural o jurídica, el Gobierno de Puerto Rico, incluyendo la Rama Ejecutiva, Legislativa y Judicial, así como sus instrumentalidades o corporaciones públicas, los gobiernos municipales y cualquiera de sus instrumentalidades o corporaciones municipales, que con ánimo de

lucro o sin él, emplee personas mediante cualquier clase de compensación". Art. 4(2) de la Ley Núm. 90, 29 LPRA sec. 3114.

El Art. 4(3) de la Ley Núm. 90, *supra,* define el acoso laboral como:

> [A]quella conducta malintencionada, no deseada, repetitiva y abusiva; arbitraria, irrazonable y/o caprichosa; verbal, escrita y/o física; de forma reiterada por parte del patrono, sus agentes, supervisores o empleados, ajena a los legítimos intereses de la empresa del patrono, no deseada por la persona, que atenta contra sus derechos constitucionales protegidos, tales como: la inviolabilidad de la dignidad de la persona, la protección contra ataques abusivos a su honra, su reputación y su vida privada o familiar, y la protección del trabajador contra riesgos para su salud o integridad personal en su trabajo o empleo. Íd.

El referido estatuto le impone al patrono la obligación de adoptar e implementar "políticas internas necesarias a los fines de prevenir, desalentar y evitar el acoso laboral en sus centros de trabajo, así como también investigará todas las alegaciones sobre el particular e impondrá las sanciones correspondientes en aquellos casos en que procedan". Art. 5 de la Ley Núm. 90, 29 LPRA sec. 3115. Ante ello, una persona que reclame ser víctima de acoso laboral primero deberá:

> [C]omunicarlo siguiendo el procedimiento y protocolo adoptado por su patrono, el cual, según ya dispuesto, deberá ser amparado en las guías uniformes establecidas por el Departamento del Trabajo y Recursos Humanos, la Oficina de Administración y Transformación de los Recursos Humanos del Gobierno de Puerto Rico, la Rama Legislativa y la Rama Judicial, según aplique.

> Si las gestiones realizadas conforme al procedimiento y protocolo adoptado por el patrono resultan infructuosas, el empleado afectado acudirá al Negociado de Métodos Alternos para la Solución de Conflictos de la Rama Judicial. Si habiéndose orientado, las partes no aceptan la mediación o el mediador no recomienda la misma, entonces se podrá acudir ante la sala del tribunal competente presentando evidencia acreditativa de que se agotó dicho mecanismo alterno y radicar la acción civil que provee esta Ley. Art. 10 de la Ley Núm. 90-2020, 29 LPRA sec. 3120.

**-E-**

Una persona contra quien se haya presentado una reclamación judicial puede solicitar su desestimación cuando, de la faz de las alegaciones de la demanda, surja que alguna defensa afirmativa puede derrotar la pretensión del demandante. *Conde Cruz v. Resto Rodríguez et al.*, 205 DPR 1043, 1077-1078 (2020). A tales efectos, la Regla 10.2 de Procedimiento Civil, 32 LPRA Ap. V, R. 10.2 establece varias defensas privilegiadas que pueden ser presentadas en cualquier momento, mediante moción debidamente fundamentada. *El Día, Inc. v. Mun. de Guaynabo*, 187 DPR 811, 820-821 (2013). Específicamente, la referida regla dispone lo siguiente:

> Toda defensa de hechos o de derecho contra una reclamación se expondrá en la alegación responsiva excepto que, a opción de la parte que alega, las siguientes defensas pueden hacerse mediante una moción debidamente fundamentada:
>
> (1) Falta de jurisdicción sobre la materia;
>
> (2) Falta de jurisdicción sobre la persona;
>
> (3) Insuficiencia del emplazamiento;
>
> (4) Insuficiencia del diligenciamiento del emplazamiento;
>
> (5) Dejar de exponer una reclamación que justifique la concesión de un remedio;
>
> (6) Dejar de acumular una parte indispensable;

Ahora bien, en lo pertinente a la controversia ante nos, el quinto inciso de la Regla 10.2 de Procedimiento Civil, *supra*, permite al demandado solicitar la desestimación de una acción cuando esta "deja de exponer una reclamación que justifique la concesión de un remedio". En tales casos, la desestimación solicitada se dirige a los méritos de la controversia y no a los aspectos procesales. *Cruz Pérez v. Roldán Rodríguez et al.*, 206 DPR 261, 267 (2021). Cabe precisar que, al evaluar una moción de desestimación bajo este fundamento, es necesario que el tribunal considere como ciertas todas las alegaciones fácticas que hayan sido aseveradas de manera clara en

la demanda. *Rivera Sanfeliz et al. v. Jta. Dir. First Bank*, 193 DPR 38, 49 (2015). Así, el Tribunal Supremo de Puerto Rico ha expresado en diversas ocasiones que, ante una moción de desestimación, las alegaciones hechas en la demanda hay que interpretarlas conjuntamente, liberalmente y de la manera más favorable posible para la parte demandante. *González Méndez v. Acción Social et al.*, 196 DPR 213, 234 (2016).

Ahora bien, es importante enfatizar que, al plantearse la defensa de dejar de exponer una reclamación que justifique la concesión de un remedio, la demanda no debe desestimarse a menos que se desprenda con toda certeza que la parte no tiene derecho a remedio alguno, independientemente de los hechos que puedan ser probados en apoyo a su reclamación**.** *Pressure Vessels P.R. v. Empire Gas P.R.*, 137 DPR, 497, 505 (1994). Por este motivo, el Tribunal tendrá que examinar con extrema cautela los hechos alegados y asegurarse de que no existe remedio a favor de la parte demandada y que la insuficiencia es de tal naturaleza que no permite el ejercicio de la acción correspondiente. *Rodríguez v. Tribunal Municipal y Ramos*, 74 DPR 656, 665 (1953). De igual forma, el Tribunal Supremo ha establecido que no procederá la desestimación de una demanda si esta es susceptible de ser enmendada. *Colón v. Lotería*, 167 DPR 625, 649 (2006). En fin, la desestimación de la reclamación judicial procede cuando surja de los hechos bien alegados en la demanda que la parte demandante no tiene derecho a remedio alguno. *Torres, Torres v. Torres et al.*, 179 DPR 481, 501 (2010).

Nuestro estado de derecho reconoce e impulsa la política judicial que establece que los casos se ventilen en sus méritos de forma rápida, justa y económica. *Amaro González v. First Fed. Savs.*, 132 DPR 1042, 1052 (1993). En consecuencia, la desestimación de un pleito, previo a entrar a considerar los argumentos que en el mismo se plantean, constituye el último recurso al cual se debe

acudir, luego de que otros mecanismos resulten ser ineficaces en el orden de administrar la justicia. *S.L.G. Sierra v. Rodríguez,* 163 DPR 738 (2005).

III.

En el recurso que nos ocupa, el apelante nos solicitó la revisión de una *Sentencia* que el TPI emitió el 11 de octubre de 2024 y notificó el 16 de octubre de 2024. Mediante su único señalamiento de error, el apelante argumentó que el TPI incidió al desestimar su reclamación por insuficiencia en las alegaciones. Sostuvo que, el TPI abusó de su discreción al imponer un nuevo estándar a favor de la desestimación y al requerirle que probara la totalidad de sus alegaciones en la *Demanda* sin haber presentado prueba testifical o documental. Asimismo, señaló que el TPI sin evaluar prueba testifical o documental, llegó a unas determinaciones de hechos y conclusiones de derecho violentando los derechos constitucionales del apelante a un debido proceso de ley y a tener su día en corte.

Ante un examen cuidadoso de las alegaciones de la *Demanda,* los escritos que obran en el expediente, los argumentos de la parte apelante en conjunto con el derecho aplicable, concluimos que el TPI no erró al declarar HA LUGAR la moción de desestimación presentada por la parte apelada. *Veamos.*

Conforme al derecho que antecede, el quinto inciso de la Regla 10.2 de Procedimiento Civil, *supra,* permite al demandado solicitar la desestimación de una acción cuando esta deja de exponer una reclamación que justifique la concesión de un remedio. A tales efectos, los tribunales al momento de evaluar una moción de desestimación deben interpretar las alegaciones en la demanda de la manera más favorable y liberal posible para la parte demandante. De modo que, si realizado dicho análisis se determina con certeza que la parte demandante no tiene derecho a un remedio procedería la desestimación del recurso.

Ahora bien, en el caso que nos ocupa, el doctor Leder alegó haber sido víctima de difamación, despido constructivo y discriminatorio, represalias, y privado de sus derechos constitucionales al debido proceso de ley. En primer lugar, para sostener una reclamación por difamación es necesario que la persona difamada alegue y pruebe esencialmente tres requisitos para que prospere su acción: (1) que la información sea difamatoria y falsa; (2) que la publicación se hiciera de forma negligente, y (3) que haya sufrido daños reales por tales manifestaciones. *Pérez v. El Vocero de P.R.*, *supra*, pág. 442. Examinada las alegaciones en la *Demanda*, el doctor Leder no cumplió con los aludidos requisitos. En su recurso, el apelante alegó que la doctora Román lo acusó falsamente de escribir una oración inapropiada en el examen de una estudiante y de haber golpeado el escritorio de dicha universitaria al devolver el mismo. Asimismo, adujo que estas acusaciones se difundieron verbalmente y por escrito a otros administradores, así como el psicólogo y el abogado de la escuela según el doctor Gilbes.

Dicho lo anterior, es menester señalar que, el apelante admitió en su *Demanda* que, en efecto, si escribió en el examen de la universitaria pero que fue una oración distinta de la cual fue alegadamente acusado. No obstante, aun considerando como falsas las acusaciones imputadas en su contra, el apelante tampoco demostró que estas hayan sido publicadas a terceros. En este sentido, el apelante alegó que el contenido de la queja se divulgó a la asistente de la doctora Román durante la reunión de Zoom y a su vez, se compartió con el psicólogo y el abogado del RUM según el doctor Gilbes. Asimismo, el doctor Leder expresó que "asumió" que la información se difundió a otros administradores de modo general sin especificar a quien o bajo que motivo. Sin embargo, a tenor con lo resuelto en *Porto y Siurano v. Bentley P.R. Inc.*, supra, en un ámbito patrono-empleado no se configura el elemento de

publicación cuando aquellos que adquieren conocimiento de la información tenga interés legítimo en su contenido. A tales efectos, tanto la asistente de la doctora Román, como el psicólogo y el abogado del RUM tenían interés legítimo para estar informados sobre el incidente como parte inherente de sus funciones. Por tanto, no ocurrió el elemento de publicación para llevar a cabo una acción de difamación.

Sobre el despido constructivo, para que esta acción se constituya se requiere (1) uno o más actos voluntarios por parte del patrono; (2) que estos estén motivados por una razón ajena al legítimo interés de salvaguardar el efectivo desempeño de la empresa o por una motivación que pueda calificarse como caprichosa, arbitraria e irrazonable; y, (3) que se crea una condición onerosa para el empleado que fuerce inevitablemente la renuncia a su puesto. *Figueroa Rivera v. El Telar, Inc.,* supra, pág. 711. Por otro lado, una reclamación sobre acoso laboral consiste en una conducta malintencionada, no deseada, repetitiva y abusiva; arbitraria, irrazonable y/o caprichosa; verbal, escrita y/o física; de forma reiterada por parte del patrono, sus agentes, supervisores o empleados, ajena a los legítimos intereses de la empresa del patrono, no deseada por la persona, que atenta contra sus derechos constitucionales protegidos. Art. 4(3) de la Ley Núm. 90, *supra.*

En sus alegaciones, el doctor Leder se enfocó primordialmente en el incidente de la *Advertencia Verbal* para sostener su reclamo sobre despido constructivo. Asimismo, señaló varios incidentes con la doctora Román para demostrar un alegado patrón de maltrato en contra de su persona que se remonta por muchos años. Ahora bien, es preciso señalar que, la doctora Román es la directora del Departamento de Inglés en RUM. Por tanto, ante la presentación de una queja por parte de una estudiante en contra del doctor Leder, era su deber como directora citar el apelante a una reunión para

dialogar sobre la misma. Esto no constituía un acto caprichoso o irrazonable por parte de la doctora Román, sino más bien, una acción llevada a cabo para el buen funcionamiento del Departamento de Inglés.

Por otro lado, el doctor Leder tampoco presentó hechos en la *Demanda* que demostraran que éste haya sido inducido a renunciar a su empleo.[13] Es decir, nunca alegó haber recibido condiciones de trabajo más onerosas, ni haber tenido una reducción de su salario o ser rebajado en categoría o ser objeto de vejámenes o humillaciones de hecho o de palabra. De igual modo, no surge de la *Demanda* o del expediente que el apelante haya sido objeto de un ambiente laboral intolerable a tal nivel que la única alternativa razonable era abandonar su empleo. Recordemos que para establecer una acción por despido constructivo no basta con cualquier molestia o condición antipática en el empleo. Además, cuando se trate de vejámenes y humillaciones, éstos deben ser de magnitud sustancial. *León Torres v. Rivera Lebrón*, supra, pág. 39.

A tales efectos, los incidentes señalados con la doctora Román tampoco demuestran un patrón de maltrato hacia el doctor Leder. A grandes rasgos, estos incidentes giran sobre desacuerdos en los planes de estudios y calificaciones, la utilización de programas para dar clases en línea y administrar exámenes en forma remota y cambios en la ubicación de estudiantes, somos del criterio que estos eventos constituyen más una diferencia de juicios profesionales en vez de un patrón de maltrato o acoso laboral. Ante ello, no se constituyeron los elementos para configurar una acción sobre despido constructivo ni de una acción sobre acoso laboral.

En cuanto a la reclamación por represalias, esta requiere que el empleado haya participado en una actividad protegida por la ley

---

[13] Cabe precisar que, el doctor Leder no renunció a su puesto sino se acogió a su retiro.

y subsiguientemente haya sido despedido, amenazado o discriminado en su empleo. *S.L.G. Rivera Carrasquillo v. A.A.A.,* supra*,* pág. 362. En este sentido, el doctor Leder alegó que, por los incidentes previamente reseñados, la doctora Román y algunos administradores están tomando represalias en contra de él mediante la *Advertencia Verbal.* Según ya hemos establecido, los incidentes señalados por el apelante constituyen una diferencia de criterio profesional en vez de un patrón de maltrato o acoso laboral. Igualmente, las alegaciones del doctor Leder se apoyan en lo que él "cree" en vez de presentar hechos que demuestren actos de represalias por parte de su patrono. A tales efectos, el doctor Leder nunca alegó haber participado en una actividad protegida por ley y subsiguientemente haber sido despedido, amenazado o discriminado en su empleo por dicha conducta. Por tal razón, las alegaciones de la *Demanda* son insuficientes para sostener una acción de represalias.

Por último, las alegaciones del doctor Leder sobre una alegada violación a su debido proceso de ley son improcedente en derecho. Las garantías constitucionales a un debido proceso de ley se activan cuando se ve afectado un derecho adquirido o interés propietario de quien las alega. *Aut. Puertos v. HEO,* 186 DPR 417, 428 (2012). El doctor Leder alegó que la *Advertencia Verbal* lo condenó por prevaricación grave sin proveerle una oportunidad para presentar su defensa. Asimismo, indicó que, aunque se le permitía responder al formulario, la condena aún permanecería en su expediente sin investigación de los hechos. Es preciso señalar que, el Art. VI de la Certificación 60 dispone que una *Advertencia Verbal*:

> [E]s una medida correctiva impuesta por el supervisor que consiste en una advertencia oral que se hace inicialmente al empleado cuando incurre en una infracción a las normas de conductas establecidas por la Universidad. **No se considera una acción**

**disciplinaria y no forma parte del expediente de personal**.[14](Énfasis Nuestro)

Como podemos observar, una *Advertencia Verbal* no se considera una acción disciplinaria ni forma parte del expediente del empleado sino una medida correctiva. Ante ello, la *Advertencia Verbal* no tuvo el efecto de activar las garantías constitucionales a un debido proceso de ley.[15] Por otra parte, el doctor Leder tampoco alegó haber sido sometido a proceso disciplinario alguno o alegar afirmativamente que la advertencia formó parte de su expediente personal. Tampoco se le impuso medidas disciplinarias de suspensión o destitución. Por tanto, no se activó las garantías constitucionales del debido proceso de ley, toda vez que no se veía envuelto un interés propietario o derecho adquirido del apelante.

En síntesis, evaluada las alegaciones de la *Demanda* de la forma más favorable a la parte apelante, somos del criterio que ninguna reclamación justifica la concesión de un remedio. Las alegaciones del doctor Leder se reducen a especulaciones y creencias que no constituyen conducta alguna para satisfacer los elementos de las acciones invocadas en la *Demanda*. A su vez, los daños alegados por el apelante no son reales, sino hipotéticos y abstractos. Del mismo modo, no se alegó hecho alguno que demuestre un "plan tortuoso y complejo" ejecutado por la doctora Román para inducir el apelante a retirarse anticipadamente. Por todo lo cual, el TPI **no** incidió al desestimar la reclamación en contra de la parte apelada, en vista de que las alegaciones de la *Demanda* son insuficientes para sostener las causas de acción que invocan.

IV.

---

[14] Art. VI del Reglamento de Procedimiento Disciplinarios para el Personal de la Universidad de Puerto Rico Certificación Núm. 60 (2022-2023).

[15] Se debe agregar que, la *Advertencia Verbal* que obra en el expediente no fue firmada por el doctor Leder, ni para aceptar o rechazar su contenido. Tampoco aparece la firma del supervisor y el espacio disponible para que el empleado pueda refutar o explicar la advertencia se encuentra vacío.

Por los fundamentos antes expuestos, ***confirmamos*** el dictamen recurrido.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda.  Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones